The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Alexander WHIDDEN, Defendant–Appellant.

No. 01CA1155.

Colorado Court of Appeals, Div. V.

June 6, 2002.

Certiorari Granted Nov. 4, 2002.

Ken Salazar, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Philip A. Cherner, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, Alexander Whidden, appeals from the trial court's order denying his Crim P. 35(c) motion. We affirm.

On October 29, 2000, defendant began serving three years of mandatory parole. Defendant provided urine samples on October 3 and December 6, 2000, both of which tested negative for controlled substances. On December 29, 2000, defendant was placed on the Intensive Supervision Program (ISP), which required that he provide additional urine samples as directed. The urine sample defendant submitted on January 1, 2001 tested positive for cocaine. Based on this positive sample, the parole officer filed a complaint to revoke defendant's parole.

At the revocation hearing, defendant argued that pursuant to § 17–2–201(5.5)(d)(I), C.R.S.2001, his parole could not be revoked for a single positive urine analysis and, alternatively, that if it were revoked, he could only be sentenced to a facility other than prison. The hearing officer found that § 17–2–201 did not apply, but under § 17–2–102(8.5)(b)(II), C.R.S.2001, the parole division had authority to seek revocation when a parolee submits a second or subsequent positive test for controlled substances. The hearing officer referred to § 17–2–103, C.R.S.2001, as giving the parole board authority regarding revocation proceedings. Based on those findings, the hearing officer revoked defendant's parole and returned him to the Department of Corrections for the remainder of his sentence.

The appellate body of the Colorado Board of Parole upheld the hearing officer's decision, finding that the parole hearing was properly conducted under the existing statutes and that the decision was within the hearing officer's discretion.

Defendant sought relief in the trial court pursuant to Crim. P. 35(c)(2)(VII) and § 18–1–410, C.R.S.2001. Defendant again asserted that § 17–2–201(5.5)(d)(I) does not authorize parole revocation for a first positive urine test. The People argued that a parole officer could seek revocation of defendant's parole pursuant to § 17–2–102(8.5)(b), and that because defendant was on ISP, the parole officer had additional authority under § 17–27.5–101, et seq., C.R.S.2001.

The trial court determined that the parole board always has the discretion to revoke parole when a condition of parole is violated. The court further concluded that § 17–2–201(5.5)(d) is a permissive statute that gives additional discretion and authority to the parole board to find conditions that would mitigate against revocation of parole and a parolee's return to the Department of Corrections. The trial court then denied defendant's motion. Defendant appeals from that order.

## I. Parole Legislation

Before addressing defendant's contentions on appeal, we first review the pertinent legislation.

The article governing parole and probation includes part 1, which governs the division of adult services, and part 2, which governs the state board of parole. See §§ 17–2–101, 17–2–201, C.R.S.2001.

The general powers, duties, and functions of the division of adult parole and its officers are described in § 17–2–102, C.R.S.2001. Section 17–2–102(8.5)(a) describes the division's options if a parolee tests positive when "initially tested," and subsection (b) describes

the options when a "second or subsequent test" is positive:

(a) Any parolee, on parole as a result of a conviction of any felony, who is under the supervision of the division of adult parole pursuant to this part 1 and who is *initially* tested for the illegal or unauthorized use of a controlled substance and the result of such test is positive shall be subject to any or all of the following actions:

(I) An immediate warrantless arrest;

(II) An immediate increase in the level of supervision, including but not limited to intensive supervision;

(III) Random screenings for the detection of the illegal or unauthorized use of a controlled substance, which use may serve as the basis for any other community placement;

(IV) Referral to a substance abuse treatment program.

(b) If any parolee described in paragraph (a) of this subsection (8.5) is subjected to a *second* or *subsequent* test for the illegal or unauthorized use of a controlled substance and the result of such test is positive, the parole officer shall take one or more of the following actions:

(I) Make an immediate warrantless arrest;

(II) Seek a *parole revocation* in accordance with section 17–2–103;

(III) Immediately increase the level of supervision, including but not limited to intensive supervision;

(IV) Increase the number of drug screenings for the illegal or unauthorized use of controlled substances;

(V) Refer the parolee to a substance abuse treatment program.

(Emphasis added.)

The arrests of parolees and parole revocation proceedings are described in § 17–2–103. Whenever a parole officer has reasonable grounds to believe that a condition of parole has been violated, the officer may issue a summons requiring the parolee to appear before the state board of parole. *See* § 17–2–103(3)(a), C.R.S.2001. If the parole board determines that a violation of a condition or conditions of parole has been committed, the board shall either revoke the parole, continue it in effect, or modify the conditions of parole "if circumstances then shown to exist require such modifications." *See* § 17–2–103(11)(a), C.R.S.2001.

Section 17–2–201 governs the state board of parole. Section 17–2–201(5.5), C.R.S.2001, describes in subsection (a) the testing program; in subsection (d)(I) the board's options if "a chemical test" is positive; and in subsection (d)(II) the options if "any subsequent chemical test" is positive:

(a) As a condition of parole, the board shall require every parolee at his own expense to submit to random chemical testing of his urine to determine the presence of drugs or alcohol. Such testing shall take place as follows:

(I) *Immediately* upon the parolee's release from incarceration in order to establish a baseline sample;

(II) Within the first thirty days from the date of parole;

(III) On or after sixty-one days but not later than six months from the date of parole; and

(IV) Annually on or after one year from the date of parole for the duration of parole.

. . . .

(d)(I) If a chemical test administered pursuant to the requirements of this subsection (5.5) reflects the presence of drugs or alcohol, the parolee may be required to participate at his own expense in an appropriate drug or alcohol program, community correctional nonresidential program, mental health program, or other fee based or nonfee based treatment program approved by the parole board.

. . . .

[ (II)](B) A parolee may be arrested and a proceeding for revocation may be initiated pursuant to the provisions of section 17–2–103 if any *subsequent* chemical test reflects the presence of drugs pursuant to subparagraph (I) of paragraph (b) of this subsection (5.5).

(Emphasis added.)

An offender whose parole is modified may be required by the state board of parole to

participate in an ISP as a condition of such parole. *See* § 17–27.5–106, C.R.S.2001. The Department of Corrections has the power to establish and enforce standards and criteria for administration of ISPs, which shall require, as relevant here, drug and alcohol screening. *See* § 17–27.5–102(1), (2), C.R.S. 2001.

## II.   Defendant's Contentions

■ Defendant contends that § 17–2–102(8.5) provides that when an individual is *initially* tested for an illegal controlled substance and the result is positive, the parole officer can arrest the individual, increase the level of supervision, or refer the individual to treatment. According to defendant, only upon the individual's second positive test may the parole officer also seek a parole revocation. He argues that, read together, §§ 17–2–102(8.5) and 17–2–201(5.5)(d)(I) limit the board's discretion, so that for a first positive urine test the offender may not be sent to prison, and only upon a second positive test may parole be revoked. We disagree.

■ The interpretation of a statute presents a question of law that we review de novo. Our primary task in construing a statute is to give effect to the intent of the General Assembly by looking first at the language of the statute. *People v. Merchant,* 983 P.2d 108 (Colo.App.1999).

■ When interpreting more than one statute, appellate courts favor a construction that avoids potential conflict between the relevant provisions. *People v. Smith,* 971 P.2d 1056 (Colo.1999); *see McIntosh v. Board of Education,* 999 P.2d 224 (Colo.App.2000)(conflicts between relevant provisions are to be avoided by reconciling or harmonizing statutes if possible).

■ If the language is clear and the intent appears with reasonable certainty, there is no need to resort to other rules of statutory construction. *People v. District Court,* 713 P.2d 918 (Colo.1986).

### A.

■ Defendant first asserts that § 17–2–201(5.5)(d)(I) is mandatory, rather than per-

missive, so that the parole board had no authority to revoke parole and imprison him for a single positive urine test. Defendant points out that the parole board's general authority to revoke or modify parole pursuant to § 17–2–103(11)(a) predates the enactment of § 17–2–201(5.5)(d). Therefore, in defendant's view, if the provisions of § 17–2–201(5.5)(d) are merely permissive, they add nothing to the statutory scheme. We reject this interpretation.

Section 17–2–103(11)(a) was enacted in 1977. *See* Colo. Sess. Laws 1977, ch. 223 at 911. Section 17–2–201(5.5) was enacted in 1987, and § 17–2–102(8.5) was enacted in 1989. *See* Colo. Sess. Laws 1987, ch. 126 at 660–61; Colo. Sess. Laws 1989, ch. 153 at 877.

As a threshold matter, there is some question whether the requirements of § 17–2–201(5.5) apply to defendant. Subsection (5.5)(a) requires chemical tests of every parolee at his or her own expense and at designated intervals, and subsection (5.5)(d) refers to a chemical test "administered pursuant to the requirements of this subsection (5.5)."

Here, it does not appear that defendant's test was administered pursuant to the guidelines in § 17–2–201(5.5). There is no evidence that defendant was tested at his own expense. One test appears to have occurred prior to his release from incarceration, and there was not a test within the first thirty days from the date of parole. Further, defendant's test in January 2001 was administered after he was required to submit to weekly chemical testing under a specific directive outlined in his ISP.

Nevertheless, even assuming the requirements of § 17–2–201(5.5) apply to defendant, we interpret both §§ 17–2–102(8.5) and 17–2–201 to prohibit revocation upon initial testing even if the result is positive, but to allow revocation upon any subsequent positive test for drugs even if the initial test was not positive.

Under § 17–2–201(5.5)(a)(I) defendant was subject to testing to establish a baseline sample. Section 17–2–201(5.5)(d)(I) only limits the authority of the board to require a parolee to participate in appropriate programs

approved by the board upon *initial* testing that reflects the presence of drugs or alcohol. This limitation is evidenced by § 17–2–201(5.5)(d)(II)(B), which authorizes the board to initiate revocation proceedings if "any *subsequent* chemical test" reflects the presence of drugs. The use of the term "any subsequent chemical test" indicates that the General Assembly intended that revocation could occur only upon a subsequent test that was positive. Thus, revocation could not occur upon the initial test even if it were positive. However, there is nothing in this statute that states that there must be at least two positive tests before revocation may occur or that revocation of parole may occur *only* upon a second positive test.

Although lacking the provisions that testing be at the parolee's expense and at specified intervals, the later enacted § 17–2–102(8.5) provides a similar range of authority. This statute states that a parolee who is "initially tested" with a positive result is subject to a number of alternatives, but not including revocation. *See* § 17–2–102(8.5)(a). However, if a parolee is subjected to a subsequent test and the result is positive, the parolee is subject to revocation. *See* § 17–2–102(8.5)(b). The statute does not require that the subsequent test be the second positive test.

This reading is consistent with the earlier enacted § 17–2–103(11)(a). Under that statute, if the parole board determines that a condition of parole has been violated, the board must either revoke the parole, continue it in effect, or modify the condition of parole "if circumstances then shown to exist require such modifications." However, the statute does not require revocation upon an initial positive testing. Further, it must be read in conjunction with §§ 17–2–201(5.5) and 17–2–102(8.5), where it is apparent that the General Assembly intended to address specifically the consequences of drug testing. *See People v. Smith, supra.*

Contrary to defendant's assertion, such a construction does not render the provisions of § 17–2–201(5.5) meaningless. As noted, § 17–2–201(5.5)(d) authorizes the board to require a parolee to enter a treatment program at his or her own expense and to be tested at specific intervals. It also allows revocation of parole only upon a second or subsequent chemical test.

Here, the record reflects that a condition of defendant's parole required him to refrain from possessing or using illegal drugs and that defendant passed an initial test in December 2000. Defendant violated this condition by submitting a positive urine sample in a subsequent test on January 1, 2001. While the parole board could have required defendant to participate in a treatment program at his own expense, the parole board also had the authority to revoke defendant's parole based on this single violation when it occurred in a subsequent test.

Because we conclude that the statutory language in 17–2–201(5.5) is unambiguous, we need not address defendant's contention that the legislative history of that statute compels a contrary result. *See People v. District Court, supra.*

B.

For the foregoing reasons, we also reject defendant's contention that because § 17–2–102(8.5)(a) uses the word "shall," that statute is not permissive and restricts the board's authority to revoke a defendant's parole unless a second or subsequent test is positive.

Therefore, we reject defendant's contention that § 17–2–102(8.5) restricts the parole board's authority to revoke his parole for a single violation based on a positive test for use of illegal drugs. *See People v. Merchant, supra.*

The order is affirmed.

Judge ROY and Judge NIETO concur.