Alexander WHIDDEN, Petitioner,

v.

**The PEOPLE of the State of Colorado, Respondent.**

No. 02SC481.

Supreme Court of Colorado, EN BANC.

Oct. 27, 2003.

As Modified on Denial of Rehearing Nov. 17, 2003.

Philip A. Cherner, Denver, Colorado, Attorney for Petitioner.

Ken Salazar, Attorney General, Christine C. Brady, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

**Introduction**

In this parole revocation appeal, we consider whether the Colorado Board of Parole has the authority to revoke parole and return a parolee to the Department of Corrections based on a single positive drug test. To answer this question we construe four complex and conflicting statutes: § 17–2–201(5.5), 6 C.R.S. (2002); § 17–2–102(8.5), 6 C.R.S. (2002); § 17–2–103, 6 C.R.S. (2002); and §§ 16–11.5–101 to 107, 6 C.R.S. (2002). The first two statutes can reasonably be interpreted to prohibit the board from revoking parole based on a single positive drug test, and the latter two statutes appear unambiguously to allow the board to revoke parole and return the parolee to the Department of Corrections after only one positive test. We resolve this conflict by holding that the board is authorized, but not required, to revoke parole based on any positive drug test that occurs after the baseline test.

In reaching this holding, we conclude that the only statutes relevant to this case are §§ 16–11.5–101 to 107 (the "Substance Abuse Act") and § 17–2–103 ("section 103"). Sections 17–2–102(8.5) ("section 102(8.5)") and 17–2–201(5.5) ("section 201(5.5)") do not apply to this case because at the time the Substance Abuse Act was enacted, the General Assembly expressly exempted application of these sections to parolees who are subject to the Substance Abuse Act.

The court of appeals, which did not consider whether the Substance Abuse Act applies to this case, construed both sections 201(5.5) and 102(8.5) to prohibit revocation only when a baseline test is positive and to allow revocation when any test other than the baseline is positive.[1] *People v. Whidden*, 56 P.3d 1201 (Colo.App.2002). While this construction

---

1. Although Whidden's counsel mentioned §§ 16–11.5–101 to 107 in a footnote in his brief to the court of appeals, the parties did not argue that §§ 16–11.5–101 to 107 were controlling in any of the proceedings below. However, after the Attorney General brought these sections to our attention in supplemental authority, both parties discussed them at oral argument.

does harmonize sections 201(5.5) and 102(8.5) with section 103 by preserving the board's authority to revoke parole whenever it finds that a condition of parole has been violated, it does not account for the exemption provisions found in sections 201(5.5) and 102(8.5). As we explain below, when the exemption provisions are applied, it becomes clear that the Substance Abuse Act and section 103 are the appropriate statutes to apply to this case. Under these provisions, the board possesses the authority to revoke parole and return a parolee to the Department of Corrections after a single positive drug test.[2] Thus, we affirm the result reached by the court of appeals but employ different reasoning, and return this case to that court with directions to remand the case to the trial court to dismiss Whidden's 35(c) motion.

## I. Facts and Proceedings Below

The petitioner, Alexander Whidden, was released on parole, and as a condition of his parole he was required to submit to random drug testing.[3] Whidden was tested three times before his parole revocation hearing. The first two tests were negative, but the third test was positive for cocaine. Based on this third positive test, Whidden's parole officer filed a complaint with the board[4] alleging Whidden violated condition eight of his parole agreement, which provided, "Parolee shall not abuse ... and/or use illegal drugs."[5]

In response, Whidden argued that the board lacked authority to revoke his parole based upon a single positive drug test, or, alternatively, if the board could revoke his parole, it did not possess the authority to return Whidden to the Department of Corrections. Whidden relied on subsection 201(5.5)(d), which he construed to provide a limited range of sanctions from which the board may choose when a parolee first tests positive for use of controlled substances.[6] Under this provision, Whidden argued, the only sanctions the board is authorized to impose after a first positive test are mandatory participation in a drug or mental health program, placement in a community correctional non-residential program, or one of the

---

2. By the term "single positive drug test," we refer to any positive test that occurs after the initial, or baseline, test. According to the administrative regulations of the Department of Corrections in effect at the time of Whidden's parole revocation hearing, this baseline test was to be collected "within twenty-four ... hours prior to the time the offender is released to parole." *Colorado Department of Corrections, Administrative Regulation number 250-12 (June 1, 2000)*. (This regulation has been superceded by *Colorado Department of Corrections, Administrative Regulation number 250-12: Offender Drug Screening* (March 15, 2003), *at* http:www.doc.state.co.us/admin_reg/index_99a.htm. The current regulation states that the baseline test should be taken "[i]mmediately (within 72 hours) upon the parolee's release from incarceration.") The baseline test is used for assessment purposes to establish a schedule of testing once the parolee is released. *See Colorado Department of Corrections, Administrative Regulation number 1250-04: Parolee Drug Screening* (Dec. 15, 2000) ("After an initial assessment pursuant to CRS 16-11.5-102 the drugs to be tested for and the frequency of testing is established."). A positive baseline test does not subject a parolee to punitive sanctions. *See* § 16-11.5-105(2), 6 C.R.S. (2002). *See also infra* Part II.

3. Two months after commencing his parole, Whidden was placed in the Intensive Supervision Program. Parolees in that program undergo in-

tensive drug testing, providing as many as four or five samples for testing per month.

4. The parole officer acted pursuant to § 17-2-103(3)(a), which provides in relevant part:

Whenever a parole officer has reasonable grounds to believe that a condition of parole has been violated by any parolee, he may issue a summons requiring the parolee to appear before the board at a specified time and place to answer charges of violation of one or more conditions of parole.

5. Parolees are required to agree to this condition by statute. *See* § 17-2-201(5)(f)(I)(H), 6 C.R.S. (2002) ("[T]he parolee shall not abuse alcoholic beverages or use illegal drugs while on parole[.]").

6. Section 17-2-201(5.5)(d)(I) and (II) provide in relevant part:

(d)(I) If a chemical test ... reflects the presence of drugs or alcohol, the parolee may be required to participate at his own expense in an appropriate drug or alcohol program, community correctional non-residential program, mental health program, or other fee based or nonfee based treatment program....

(II)(A) Any subsequent chemical testing reflecting the presence of alcohol may be grounds for arrest of the parolee and the initiation of revocation proceedings at the discretion of the parole officer pursuant to section 17-2-103.

other "intermediate sanctions" listed in subsection 201(5.5)(d)(I). The administrative hearing officer disagreed, finding that section 201(5.5) did not apply because it governs only the baseline test, which a parolee is required to give immediately upon release.[7] Because Whidden's positive test occurred later in his parole period, after the baseline test, the hearing officer found that the division of adult parole possessed authority under section 102(8.5)(b)(II)[8] to seek revocation based on a single positive test, and that she possessed the authority under section 103 to order revocation. She then found that Whidden had violated a condition of his parole, and, based on that finding and other factors unique to Whidden's case, she revoked Whidden's parole and returned him to the Department of Corrections to serve the remainder of his sentence.

Whidden appealed. In the district court, the assistant district attorney argued that section 102(8.5) controls and that limited sanctions are only required if a parolee's baseline test is positive.[9] If any test after the baseline test is positive, the board then has authority to revoke parole. Whidden again argued section 201(5.5)(d) controls his case and limits the authority of the board to revoke parole after a single positive drug test. The district court applied section 201(5.5)(d), reasoning that the language of that provision is permissive and does not limit the board's traditional authority to revoke parole based on any violation of a parole

agreement. The district court construed the statute to add to the board's authority to revoke parole by allowing it to take measures short of revocation should it find mitigating circumstances in a particular case. In other words, the district court found that subsection 201(5.5)(d) expands rather than limits the board's traditional power to impose punitive sanctions, including revocation and imprisonment for parolees who violate the terms of their parole agreements.

In an attempt to avoid conflicts between sections 102(8.5), 201(5.5), and 103, the court of appeals affirmed the trial court, holding that sections 201(5.5) and 102(8.5) "prohibit revocation upon initial testing even if the result is positive, but ... allow revocation upon any subsequent positive test for drugs even if the initial test was not positive." *Whidden,* 56 P.3d at 1204. That court interpreted both subsections 201(5.5)(d)(I) and 102(8.5)(a) to restrict the board's authority to impose sanctions only if the baseline test is positive. *See id.* at 1204–05. On the other hand, the court reasoned, neither provision states "that there must be at least two positive tests before revocation may occur or that revocation of parole may occur *only* upon a second positive test." *Id.* at 1205 (emphasis in original).

The court determined that this interpretation harmonizes sections 102(8.5) and 201(5.5) with section 103, which permits the board to modify or revoke parole whenever it deter-

7. Revocation proceedings may be presided over by administrative hearing officers pursuant to §§ 17–2–201(3)(c)(I) and (II). Hearing officers have the same authority as the board to conduct revocation proceedings and impose sanctions pursuant to § 17–2–103. *See* § 17–2–201(4)(b), 6 C.R.S. (2002). In addition, hearing officers must adhere to the rules and regulations promulgated by the Department of Corrections. *See* § 17–2–201(3)(c)(II).

8. Section 17–2–102(8.5) also deals with drug testing and states in relevant part:

(a) Any parolee, on parole as a result of a conviction of any felony, who is under the supervision of the division of adult parole ... and who is initially tested for the illegal or unauthorized use of a controlled substance and the result of such test is positive shall be subject to any or all of the following actions:
(I) An immediate warrantless arrest;

(II) An immediate increase in the level of supervision ...;
(III) Random screenings ..., which use may serve as the basis for any other community placement;
(IV) Referral to a substance abuse treatment program.
(b) If any parolee described in paragraph (a) of this subsection (8.5) is subjected to a second or subsequent test for the illegal or unauthorized use of a controlled substance and the result of such test is positive, the parole officer shall take one or more of the following actions:
(I) Make an immediate warrantless arrest;
(II) Seek a parole revocation in accordance with section 17–2–103[.]

9. A baseline test is required under § 17–2–201(5.5)(a)(I), and the board must obtain a sample for testing from a parolee "[i]mmediately upon the parolee's release from incarceration in order to establish a baseline sample[.]"

mines that a condition of parole has been violated. It also held that this construction comports with the plain meaning of the statutes.

Whidden now appeals to us, arguing the court of appeals' construction of sections 102(8.5) and 201(5.5) is incorrect.[10]

## II. Analysis

Whidden contends that sections 102(8.5) and 201(5.5) limit the board's power to revoke parole and imprison a parolee based on a single positive drug test. On the other hand, the People argue that the court of appeals' construction of these statutes is correct, and sections 102(8.5) and 201(5.5) should be interpreted to authorize the board to revoke parole if any test other than the baseline reflects the presence of controlled substances. We do not reach either of these arguments because the plain language of both of these provisions prohibits application of either section 201(5.5) or 102(8.5) to any parolee to whom the Substance Abuse Act applies.

When the General Assembly enacted the Substance Abuse Act in 1991 it added two exemption provisions to sections 201(5.5) and 102(8.5), each of which states, "[t]his subsection ... shall not apply to any parolee to whom [the Substance Abuse Act] applies." *See* § 17–2–201(5.5)(g), 6 C.R.S. (2002); § 17–2–102(8.5)(c), 6 C.R.S. (2002). If these exemption provisions apply, then the directives of sections 201(5.5) and 102(8.5) cannot be applied to a particular case, and therefore there is no need to interpret or address them.

10. The question we granted certiorari on is: "Whether the court of appeals erred in upholding revocation of the defendant's parole based on a single positive drug test."

11. Throughout this section, we refer to administrative regulations promulgated by the Department of Corrections. These regulations can be found on the Department of Corrections website, which is cited where appropriate. To find the regulation we cite, refer either to the index of all regulations or use the website's search engine using the keyword "parole."

12. The legislative declaration that appears in this section expresses the General Assembly's intent

The Substance Abuse Act is comprehensive legislation that applies to offenders at all stages of the criminal justice system, including those under the supervision of the Department of Corrections and the State Board of Parole. *See* §§ 16–11.5–102, 103, 104, and 105, 6 C.R.S. (2002). In addition, the Substance Abuse Act governs the same activities regulated by sections 201(5.5) and 102(8.5)— namely drug testing and punishment of parolees who abuse controlled substances.

As an initial matter, we conclude that the exemption provisions preclude application of sections 201(5.5) and 102(8.5) to this case. Neither of the parties dispute that Whidden was under the board's supervision at all times relevant to this appeal. Thus, according to the terms of the Substance Abuse Act, Whidden's case falls within its purview.

The only issue remaining, then, is whether the board possesses the authority under the Substance Abuse Act to revoke parole and return a parolee to the Department of Corrections based on a single positive drug test. To address this issue, we now turn the Substance Abuse Act.

### The Substance Abuse Act

The Substance Abuse Act—the most recently enacted parole statute—was codified in 1991.[11] The purpose of the legislation was to standardize testing, treatment, and punishment of offenders throughout the criminal justice system who abuse controlled substances.[12] The individual sections of this act are intentionally broad and designed to regulate all activities related to assessment, treatment, and punishment. The two most comprehensive sections are 102 and 105, both of

to make the Substance Abuse Act comprehensive legislation:

[T]he general assembly hereby resolves to curtail the disastrous effects of substance abuse in the criminal justice system by providing for consistency in the response to substance abuse throughout the criminal justice system and to improve and standardize substance abuse treatment for offenders at each stage of the criminal justice system and to provide punitive measures for offenders who refuse to cooperate with and respond to substance abuse treatment[.]

§ 16–11.5–101, 6 C.R.S. (2002).

which encompass all offenders under the supervision of the Judicial Department, the Department of Corrections, and the State Board of Parole. *See* § 16–11.5–102(1) 6 C.R.S. (2002); § 16–11.5–105(1), 6 C.R.S. (2002).

Each section focuses on a different aspect of assessment, treatment, and punishment of offenders. Section 102 directs the various agencies covered by the Act to develop and implement standardized assessment procedures, treatment programs, and punitive sanctions for all offenders. Sections 103 and 104 concern assessment and testing of parolees. Section 105 requires the agencies covered by the Act to impose punitive sanctions on any offender who tests positive for controlled substances, and to "develop and make public guidelines for the revocation of parole due to the abuse of ... controlled substances." [13] § 16–11.5–105(4), 6 C.R.S. (2002). And section 106 authorizes parole officers to collect samples from parolees for drug testing.

Under the testing procedures and punitive sanctions regime set forth in the Substance Abuse Act, the board is authorized, but not required, to revoke parole based on a single positive test. Before a parolee is released on parole, he is given an "initial," or baseline, test for assessment purposes. *See* § 16–11.5–104(2), 6 C.R.S. (2002); *Colorado Department of Corrections, Administrative Regulation number 250–24: Parolee Drug Screening* (Dec. 15, 2002) http://www.doc.state.co.us/admin–reg/admin–reg.html.[14] According to the administrative regulations of the Department of Corrections, this baseline test is collected "[i]mmediately (within 72 hours) upon the parolee's release from incarceration." *Colorado Department of Corrections, Administrative Regulation number 250–12: Offender Drug Screening* (March 15, 2003), *at* http://www.doc.state.co.us/admin–reg/index–99a.htm. This test is used for assessment purposes to establish a testing schedule once the parolee is released. *Colorado Department of Corrections, Administrative Regulation number 250–24: Parolee Drug Screening* (Dec. 15, 2002), *at* http://www.doc.state.co.us/admin–reg/admin–reg.html. Because this test is given for assessment purposes, it is treated differently than tests administered as part of a monitoring program and cannot give rise to punitive sanctions, even if it is positive for controlled substances. *See* §§ 16–11.5–102(1)(a), 104(2), and 105(2), 6 C.R.S. (2002).

If any test given after the baseline test is positive for controlled substances, however, the parolee "shall be subjected to a punitive sanction." § 16–11.5–105(2), 6 C.R.S. (2002). The board is authorized to implement any sanction that is appropriate to offenders under its jurisdiction. Authorized sanctions include, but are not limited to, "referral of the offender to the ... state board of parole for ... revocation of ... parole." *Id.* If the board decides to take this action and revoke parole based on its finding that the parolee has violated a condition of parole, it may then return the parolee to the Department of Corrections. *See* § 17–2–103(11)(b)(II)(A), 6 C.R.S. (2002).

We note in passing that the Substance Abuse Act is entirely consistent with section 103. This section, which was enacted in 1977, authorizes a parole officer to initiate revocation proceedings whenever he "has reasonable grounds to believe that a condition of parole has been violated by any parolee." § 17–2–103(3)(a), 6 C.R.S. (2002). Once revocation proceedings have been initiated, the parole board has the authority under subsection 103(11)(a) to modify or revoke parole "[i]f the board determines that a viola-

---

**13.** In accordance with subsection 105(4) of the Substance Abuse Act, in December of 2000 the Department of Corrections promulgated regulations specifying which sanctions can be imposed on a parolee who abuses controlled substances. *See Colorado Department of Corrections, Administrative Regulation number 1250–04: Parolee Drug Screening* (Dec. 15, 2000). This regulation has been superceded by *Colorado Department of Corrections, Administrative Regulation number 250–24: Parolee Drug Screening* (December 15, 2002) *at* http://www.doc.state.co.us/admin_reg/admin–reg.html, which contains an identical schedule of sanctions to the 2000 regulation.

**14.** At the time of Whidden's parole revocation hearing, the regulation in effect was *administrative regulation (AR) 1250-04, which contains identical language to the current regulation defining the initial test. See Colorado Department of Corrections, Administrative Regulation number 1250-04: Parolee Drug Screening* (December 15, 2000).

tion of a condition or conditions of parole has been committed."

When read together, we conclude that the Substance Abuse Act and section 103 authorize, but do not require, the board to revoke parole and return a parolee to the Department of Corrections based upon a single positive drug test. We now turn to the facts of this case to determine whether the administrative hearing officer acted within her statutory authority when she revoked Whidden's parole.

## III. Application

In this case, the administrative hearing officer found that Whidden violated a condition of his parole when the third test administered during his parole period showed the presence of controlled substances. The hearing officer then revoked Whidden's parole and returned him to the Department of Corrections in accordance with both our statutory mandates and the regulations promulgated by the Department of Corrections.

Hearing officers have the same authority as the board to conduct revocation proceedings and impose sanctions pursuant to § 17–2–103. *See* § 17–2–201(4)(b), 6 C.R.S. (2002). In addition, hearing officers must adhere to the rules and regulations promulgated by the Department of Corrections. *See* § 17–2–201(3)(c)(II).

In this case, the complaint alleging that Whidden violated a condition of his parole by testing positive for controlled substances was filed pursuant to section 103(3)(a). As we discuss above, this section authorizes a parole officer to initiate revocation proceedings whenever she suspects that a condition of parole has been violated. Where, as here, a parolee violates a condition of his parole agreement, rather than committing a separate criminal offense, the complaint is considered discretionary and is decided on a case by case basis.[15] *See Colorado Department of Corrections, Administrative Regulation number 1250–39: Parole Revocation/Violation Process* (Dec. 15, 2002), at http://www.doc.state.co.us/admin–reg/admin–reg.html.[16]

Our review of the record reveals that the hearing officer revoked Whidden's parole based both on her finding that he had violated a condition of his parole by testing positive for using controlled substances and upon other factors unique to Whidden's case that were within her discretion to consider. Her findings and subsequent decision to revoke are consistent with the Department of Corrections' regulations, which authorize case-by-case determination of complaints such as that filed against Whidden. Thus, we conclude that the hearing officer acted in accordance with our statutory mandates and within her discretion under the regulations promulgated by the Department of Corrections.[17]

We affirm the court of appeals and remand to that court with instructions to return the

---

15. Under both the current regulation and the regulation in effect at the time of Whidden's parole revocation hearing, the only parole violations that give rise to mandatory complaints are crimes of violence, felony charges, possession or use of a firearm or deadly weapon, refusal to submit to urinalysis, and alcohol or drug-related traffic offenses. *See Colorado Department of Corrections, Administrative Regulation number 1250–39: Parolee Drug Screening* (May 15, 2002), at http://www.doc.state.co.us/admin–reg/admin–reg.html; Colorado Department of Corrections, Administrative Regulation number 1250–39: Mandatory Arrest/Detention and Initiation of Revocation Proceedings *(February 1, 2000). When a parolee violates any other condition of parole, the complaint is considered discretionary, which means the parole officer may exercise her discretion in determining whether to file a complaint.* See id.

16. Under the regulation in effect at the time of Whidden's parole revocation hearing, a complaint based on a violation of a condition of parole was also considered discretionary and was decided on a case by case basis. *See Colorado Department of Corrections, Administrative Regulation number 1250-39: Mandatory Arrest/Detention and Initiation of Revocation Proceedings* (February 1, 2000).

17. At oral argument, counsel for Whidden argued that because the hearing officer did not rely on the Substance Abuse Act in Whidden's revocation hearing, the case should be remanded. Our review of the record in this case reveals that the hearing officer acted within her statutory discretion when she revoked Whidden's parole. Thus, we find no basis to remand this case for rehearing.

case to the trial court for dismissal of Whidden's 35(c) motion.