The PEOPLE of the State of
Colorado, Petitioner,

v.

Kimberly SMITH, Respondent.

No. 97SC432.

Supreme Court of Colorado,
En Banc.

Jan. 11, 1999.

Rehearing Denied Feb. 16, 1999.

See also 932 P.2d 830.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Catherine P. Adkisson, Assistant Attorney General, Criminal Enforcement Section Denver, Colorado, Attorneys for Petitioner

David F. Vela, Colorado State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, Colorado Attorneys for Respondent

Chief Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to resolve the issue of whether a defendant serving a mandatory sentence for child abuse resulting in death is eligible for sentence modification upon completion of the regimented inmate training program. We hold that, in general, such a defendant is eligible for sentence reduction. However, because we conclude that a court may not impose a sentence below the statutory minimum, and the defendant in this case received the statutory minimum sentence, she was not eligible for sentence reduction. Therefore, we reverse the court of appeals' judgment in *People v. Smith*, 946 P.2d 570 (Colo.App.1997) and return the case to the court of appeals with directions to consider the defendant's constitutional claims.

## I. FACTS AND PRIOR DISPOSITION

The defendant, Kimberly Smith, was the stepmother of Shamika Smith. On February 4, 1991, Shamika Smith, then six years old, was admitted to Memorial Hospital with a severe closed-head injury. She remained in a coma until March 12, 1991 when she died as a result of her injury. Kimberly Smith was the only person present when her stepdaughter was injured. On March 25, 1991, Smith was charged by information with child abuse resulting in death, in violation of section 18–6–401(7)(a)(I), 8B C.R.S. (1986).

On November 7, 1991 a jury returned a guilty verdict, and the trial court sentenced Smith to sixteen years in the custody of the Department of Corrections. In November 1994, Smith filed a Motion for Sentence Reconsideration pursuant to Crim. P. 35(b). The trial court denied her motion, explaining that it did not have legal authority to reduce her sentence below the mandatory minimum of sixteen years. The court of appeals affirmed the trial court's judgment. See People v.*Smith*, 932 P.2d 830 (Colo.App.1996), *cert. denied*, No. 96SC558 (Colo. Mar. 17, 1997).

While Smith's appeal from denial of her Crim. P. 35(b) motion was pending, the Department of Corrections assigned her to the regimented inmate training program (RITP) or "boot camp." See §§ 17–27.7–101 to –104, 6 C.R.S. (1998). She successfully completed the program and filed a timely motion for reduction of her sentence pursuant to section 17–27.7–104. At the resentencing hearing, Smith presented testimony from, among others, Lieut. Patrick Drawbridge, her senior case manager for the RITP. Lieut. Drawbridge praised Smith's conduct and recommended her for sentence reduction or placement in a community corrections program. In other testimony, Smith's RITP conduct was described as being "an example to her peers." Despite this testimony, the trial court denied her motion, again finding that it did not have authority to reduce her sentence below the statutory minimum. On appeal, the court of appeals reversed the trial court's decision. *See Smith*, 946 P.2d at 573. The court of appeals relied on a distinction between "suspending" a sentence and "modifying" a sentence. The court found that although section 18–1–105(9)(d)(II) prohibited the trial court from suspending any part of Smith's sentence, it did not bar the trial court from modifying her sentence pursuant to section 17–27.7–104. *See id.* at 572–73. We granted certiorari, and we now reverse the court of appeals' judgment.

## II. Analysis

### A.

This case raises an issue regarding the interplay between resentencing under the RITP act and mandatory sentencing following a conviction for child abuse resulting in death. The People argue that although

Smith was eligible to participate in the RITP or "boot camp" program, she was not eligible to take advantage of the "reward" provision. According to their reading, the mandatory sentencing provision and the RITP act conflict in this case because successful completion of the RITP qualified Smith for sentence reduction under section 17–27.7–104, yet she had already received the mandatory minimum sentence. *See* § 18–1–105(9)(d), 6 C.R.S. (1998) (mandatory sentencing provision). The People reason that the mandatory sentencing provision must govern these circumstances because it is specific to sentencing, and the legislature intended to establish an absolute minimum sentence that could not be lowered by the sentencing court.

According to Smith the plain language of section 17–27.7–104 establishes the trial court's discretion to "issue an order modifying the offender's sentence and placing the offender on probation or in a community corrections program."[1] Smith asserts that the General Assembly has not restricted the sentencing court's exercise of this discretion in any manner. To resolve any conflict with the mandatory sentencing statute, she relies on the court of appeals' distinction between "modification" of a sentence, allegedly permissible under section 17–27.7–104, and "suspension" of a sentence, prohibited by the mandatory sentencing provisions.

Smith further argues that the legislative intent of the RITP legislation "entitle[s] [Smith] to an opportunity equal to that given to other successful participants in this unique [boot camp] program." Finally, if we do find a conflict between the two statutes, Smith urges us to rely on the principle that the more recent statute, i.e. the RITP act, controls. *See Smith v. Zufelt*, 880 P.2d 1178, 1184 n. 9 (Colo.1994); *United States Fidelity & Guar. Co. v. Salida Gas Serv. Co.*, 793 P.2d 602, 604 (Colo.App.1989).

Our analysis of the RITP statute's plain language leads us to the conclusion that it extends an offender's right to have his or her sentence reconsidered; however, it does not affect the ultimate sentencing range. Thus,

we find that it does not conflict with the sentencing requirements set out in section 18–1–105(9)(d) and that the sentencing court properly refused to impose a sentence outside the mandatory sentencing guidelines.

### B.

Basic rules of statutory construction govern our analysis. Our primary task is to give effect to the intent of the legislature. *See People v. Murphy*, 919 P.2d 191, 194 (Colo. 1996). To discern such intent, we first look to the statutory language, according terms their plain and ordinary meaning. *See id.* When the plain language is clear, we will not rely on interpretive rules of statutory construction. *See Vaughan v. McMinn*, 945 P.2d 404, 408 (Colo.1997).

■ With respect to relevant case law, we presume that the general assembly is cognizant of judicial precedent when it enacts legislation. *See id.* at 409. Specifically, the legislature "is presumed to be aware of judicial interpretations of statutory language when it intentionally incorporates the language of one statute into another statute." *Stoorman v. Greenwood Trust Co.*, 908 P.2d 133, 135 (Colo.1995).

■ As the parties note, when interpreting more than one statute, we will favor a construction that avoids potential conflict between the relevant provisions. *See Zufelt*, 880 P.2d at 1183. If a conflict cannot be reconciled, the more specific provision should prevail over the general provision unless the more general provision was adopted later and there is manifest intent that the general provision prevail. *See* § 2–4–205, 1 C.R.S. (1998); *Zufelt*, 880 P.2d at 1183.

With these principles in mind, we turn to the relevant statutes. For her conviction of child abuse resulting in death, Smith was sentenced pursuant to section 18–1–105(9) which provides, in relevant part:

(d)(I) If the defendant is convicted of the class 2 or the class 3 felony of child abuse under section 18–6–401(7)(a)(I) or

---

1. The People correctly note that Smith is not, in any case, eligible for probation or placement in a community corrections program due to explicit

limitations, not relevant here, specified in a related subsection of the RITP act. *See* § 17–27.7–104(2)(c)(I).

(7)(a)(III), the court shall be required to sentence the defendant to a term of at least the midpoint in the presumptive range but not more than twice the maximum term authorized in the presumptive range for the punishment of that class felony.

(II) In no case shall any defendant sentenced pursuant to subparagraph (I) of this paragraph (d) be eligible for suspension of sentence or for probation or deferred prosecution.

§ 18–1–105(9)(d). It is undisputed that Smith's conviction triggered this mandatory sentencing provision, that sixteen years was the minimum sentence within the applicable range, and that the trial court sentenced her to the statutory minimum.

In addition, the parties stipulated that Smith was qualified for and successfully completed the regimented inmate training program. Section 17–27.7–104(2) of the RITP act provides, in relevant part:

(2)(a) If an offender successfully completes a regimented inmate training program, such offender, within sixty days of termination or completion of the program, shall automatically be referred to the sentencing court so that the offender may make a motion for a reduction of sentence pursuant to rule 35b of the Colorado rules of criminal procedure.

. . . .

(b) ... The court may issue an order modifying the offender's sentence and placing the offender on probation or in a community corrections program.

§ 17–27.7–104(2). We must determine whether, in this case, the trial court's discretion to "modify" an offender's sentence includes discretion to impose a sentence lower than the statutory minimum for the crime of which the defendant has been convicted.

We begin with the plain language of the RITP statute. The language of RITP section 17–27.7–104(2)(a) incorporates our long-standing Crim. P. 35(b) framework by authorizing the defendant to file a motion "pursuant to rule 35(b)" after the defendant has successfully completed the RITP. Therefore, we first consider the extent of a trial court's

discretion under Crim. P. 35(b). That rule provides:

**Reduction of Sentence.** The court may reduce the sentence provided that a motion for reduction of sentence is filed (1) within 120 days after the sentence is imposed, or (2) within 120 days after receipt by the court of a remittitur issued upon affirmance of the judgment or sentence or dismissal of the appeal, or (3) within 120 days after entry of any order or judgment of the appellate court denying review or having the effect of upholding a judgment of conviction or sentence. The court may, after considering the motion and supporting documents, if any, deny the motion without a hearing. The court may reduce a sentence on its own initiative within any of the above periods of time.

Crim. P. 35(b).

Crim. P. 35(b) serves to "suspend[ ] the concept of finality of a criminal judgment of conviction." *People v. Smith*, 189 Colo. 50, 51, 536 P.2d 820, 822 (1975) (discussing Crim. P. 35(a), the precursor to current Crim. P. 35(b)). This rule defines the time frame during which the sentencing court retains jurisdiction to reconsider a sentence, and it identifies the evidence a court may consider in the process. The court may reconsider its sentence "in light of all relevant material factors which may or may not have been initially considered by the court." *People v. Fuqua*, 764 P.2d 56, 60 (Colo.1988). We have previously found that "relevant material factors" may include evidence of the offender's exemplary conduct while incarcerated, even though the conduct may have occurred after the initial sentencing. *See Ghrist v. People*, 897 P.2d 809, 813 (Colo.1995). Thus, successful completion of the RITP is precisely the type of exemplary behavior that an offender may present at a Crim. P. 35(b) hearing provided that the motion is timely. Section 17–27.7–104(2)(a) of the RITP statute serves to extend the window during which a motion is timely by requiring the Department of Corrections to refer a successful RITP participant to the sentencing court "within sixty days of termination or completion of the program."

■ Section 17–27.7–104(2)(b) of the RITP act does not merely alter the time limitation on filing a motion pursuant to Crim. P. 35(b). It also makes clear that the general assembly intended the sentencing court to give heightened consideration to exemplary behavior in the RITP context on a motion for resentencing:

> The department shall submit a report to the court concerning such offender's performance in the [RITP]. Such report may recommend that the offender be placed in a specialized probation or community corrections program. *The court may not summarily deny the offender's motion without a complete consideration of all pertinent information* provided by the offender, the offender's attorney, and the district attorney.

§ 17–27.7–104(2)(b) (emphasis added). The requirement that the court give "complete consideration" to information submitted by the offender enhances the Crim. P. 35(b) requirement that the court "consider[ ] the motion and supporting documents, if any." Crim. P. 35(b). The effect of the RITP language is to encourage sentence reduction, serving the general assembly's stated intent "that the [RITP] shall benefit the state by reducing prison overcrowding." § 17–27.7–101. The general assembly provided further evidence of its intent that sentence reduction be more likely for successful RITP participants like Smith when it required courts to give "priority consideration" to motions filed under this statute. § 17–27.7–104(2)(c)(I). The mandates for "complete" and "priority" consideration do not, however, alter the range of a court's sentencing discretion. Rather, they make reduced sentences more likely by requiring heightened consideration of the offender's success in the RITP.

■ The range of the court's sentencing discretion continues to be defined by relevant sentencing guidelines. We have previously held that a Crim. P. 35(b) motion gives the court "discretion to resentence the defendant to a lesser term *within the statutory limits.*" *Fuqua,* 764 P.2d at 60 (emphasis added); *accord Smith,* 189 Colo. at 52, 536 P.2d at 822. There is no language in the RITP act indicating that the legislature intended to give the sentencing court discretion to lower a mandatory minimum sentence imposed by law for a specific crime. Therefore, we must presume that the general assembly intended to incorporate relevant statutory sentencing limits when it specified that an RITP participant's "motion for reduction of sentence [is] pursuant to rule 35b." *See Stoorman,* 908 P.2d at 135. We conclude that resentencing of a successful RITP participant is governed by the same statutory limits applicable to Crim. P. 35(b) resentencing.

■ It is undisputed that section 18–1–105(9)(d)(I) controlled the statutory limitation on Smith's initial sentencing: "If the defendant is convicted of the class 2 or the class 3 felony of child abuse under section 18–6–401(7)(a)(I) or (7)(a)(III), the court shall be required to sentence the defendant to a term of at least the midpoint in the presumptive range." § 18–1–105(9)(d). Neither Crim. P. 35(b) nor the RITP act permits a sentencing court to alter the sentencing range. In other words, the mandatory minimum sentence applies as much to a resentencing as to an initial sentencing of an offender who has been convicted of child abuse resulting in death. To find otherwise would vitiate the purpose of a mandatory sentencing range because the same reasoning would permit a sentencing court, on its own initiative, to reduce a sentence below the mandatory minimum at any time within 120 days after its imposition. *See* Crim. P. 35(b). Clearly that would be an absurd result, inconsistent with our caselaw interpreting rule 35(b).

Nevertheless, Smith argues that because the RITP act refers to "modifying" a sentence, and because neither rule 35(b) nor the mandatory sentencing provision uses this precise term, the sentencing court's discretion was not limited by the latter authorities. Therefore, according to Smith's argument, the general assembly distinguished the RITP act by using the term "modify," and, in doing so, it eliminated statutory limits on the sentencing court's discretion to alter her sentence. Smith's argument relies on a semantic distinction suggesting that judicial discretion for sentence *modification* under section 17–27.7–104 somehow avoids the con-

straints that apply to sentence *reduction* under Crim. P. 35(b). The alleged distinction is not persuasive. The RITP statute does not use the word "modify" consistently in reference to resentencing. In section 17–27–104(2)(a), the statute refers to a "motion for reduction of sentence pursuant to rule 35(b)." The term "reduction" explicitly triggers the Crim. P. 35(b) framework on which we rely. We are unwilling to seize upon a single use of the term "modify" to construct a novel conception of the sentencing court's discretion at the expense of an existing framework to which the general assembly has clearly directed us.

The RITP statute provides an offender like Smith with the right to have her sentence reconsidered within the limits of the relevant sentencing provision that bounds the sentencing court's discretion. *See Ghrist,* 897 P.2d at 812 (reviewing sentencing court's jurisdiction "in light of the purposes of the sentencing code"). Smith was not denied this right in the case before us. Instead, the relevant limits explicitly set Smith's minimum sentence at sixteen years. Had she received a longer sentence initially, her sentence could have been reduced to the mandatory minimum. Because she received the mandatory minimum sentence at the outset, no further reduction is possible. To find otherwise would impermissibly extend a sentencing court's discretion beyond the limits set by the general assembly when it established the penalties for the crime of child abuse resulting in death. *See Fuqua,* 764 P.2d at 60.

▮ Therefore, we hold that a defendant serving a mandatory sentence for child abuse resulting in death is eligible for sentence reduction upon completion of the regimented training program but that, barring explicit language to the contrary, the sentencing court's discretion is limited by the relevant mandatory sentencing limits. The sentencing court, considering Smith's resentencing within the framework of the mandatory sentencing provision in section 8–1–105(9)(d), ruled correctly that Smith's sentence, already at the statutory minimum, could not be further reduced in spite of her exemplary RITP conduct.

Because the plain language of the statutes resolves the issue before us, we need not consider the parties' other arguments regarding statutory construction.

### III. CONCLUSION

For the reasons discussed above, we reverse the judgment of the court of appeals. The record reflects that Smith raised constitutional challenges that the court of appeals did not reach as a result of its disposition of the statutory question. We remand for the court of appeals to consider these challenges.