Herman JENKINS, Bebra Jenkins, Bonnie Bills, Travis Law, Rainey Estes, and Nathaniel Estes, Petitioners

v.

PANAMA CANAL RAILWAY COMPANY, d/b/a Panama Rail Tourism Company, The Estate of Stephen O'Donnell, and Kansas City Southern Railway Company, Respondents.

No. 08SC122.

Supreme Court of Colorado, En Banc.

May 18, 2009.

Law Offices of James Peters, P.C., James J. Peters, Qusair Mohamedbhai, Denver, Colorado, Attorneys for Petitioners.

Burns Figa & Will, P.C., Jennifer Osgood, Dana L. Eismeier, Greenwood Village, Colorado, Attorneys for Respondents.

Justice MARTINEZ delivered the Opinion of the Court.

## INTRODUCTION

Herman and Bebra Jenkins, Rainey and Nathaniel Estes, Bonnie Bills, and Travis Law (collectively, "Jenkins") took a cruise vacation to Panama, and while there took a train ride along the Panama Canal. In the course of the train ride, Jenkins's train collided head-on with another train, and he suffered injuries. Upon returning to Colorado, Jenkins sought to recover from multiple entities, including Panama Canal Railway Company, its owner, and the train's operator (collectively, "Panama Canal"). Relying on Colorado's two year statute of limitations, Jenkins filed a law suit within two years of the collision. Relying on Panama's one year statute of limitations, Panama Canal moved to dismiss the action as untimely. The district court converted Panama Canal's motion to a motion for summary judgment and granted it. It found Colorado's borrowing statute applied to Jenkins's claims, and pursuant to that statute, Panama's one year statute of limitations barred the action. Jenkins appealed, arguing that Colorado's limitations act applied to the claims and pursuant to that statute, Colorado's two year statute of limitations did not bar the action. The court of appeals affirmed the district court. *Jenkins v. Haymore*, No. 06CA0846, 208 P.3d 265, 2007 WL 4531712 (Colo.App. Dec.27, 2007) (selected for official publication). Jenkins sought review from this court to determine which statute, and thus which limitations period, applies. Because the borrowing statute is more recent, we hold it applies to Jenkins's claims. Therefore, we affirm the court of appeals' judgment on separate grounds.

## FACTS & PROCEDURE

Jenkins was a Colorado resident when he booked a cruise vacation with Charlotte Haymore's Colorado company, Charlotte's Cruises–N–Tours (collectively, "Haymore"), for the fall of 2001. As part of the vacation package, Jenkins purchased tickets for a train ride along the Panama Canal, on a train operated by Panama Canal Railway Company. On December 2, 2001, Jenkins was aboard a Panama Canal Railway Company train operated by Stephen O'Donnell when the accident occurred. Jenkins's train collided head-on at 20–25 miles per hour with another Panama Canal train that was stopped on the same track. Jenkins received injuries as a result of this collision. O'Donnell subsequently died, but it is not clear whether the collision caused his death. Jenkins was offered medical treatment in Panama, contingent on signing a waiver written in Spanish. Jenkins does not speak Spanish; thus, he declined to sign the waiver and did not receive treatment at that time. Once back in Colorado, Jenkins incurred costs in treating his injuries.

On December 1, 2003, Jenkins sought to recover for these injuries, and brought a negligence action in Colorado district court against multiple entities, including Haymore and Panama Canal. After what appears to have been a fairly contentious discovery period, Panama Canal filed a motion to dismiss on November 28, 2005. It argued in part that Colorado's borrowing statute, section 13–80–110, C.R.S. (2008), applied to Jenkins's action because his claims arose in Panama. Therefore, under the borrowing statute, Panama's one year statute of limitations applied, and barred Jenkins's action filed two years after the collision.

Based on affidavits attached to Panama Canal's motion and Jenkins's response, the district court converted Panama Canal's motion to dismiss into a motion for summary judgment. On February 16, 2006, the district court found Jenkins's claims arose in Panama, and thus the borrowing statute applied. Pursuant to the borrowing statute, the district court applied Panama's one year statute of limitations, and found Jenkins's negligence action filed two years after the collision was time-barred. Therefore, the district court granted summary judgment to Panama Canal. Based on this ruling, Haymore filed an emergency motion to dismiss. On February 23, 2006, in accordance with its order granting summary judgment, the district court granted Haymore's motion.

Jenkins appealed the district court's February 16, 2006 order granting summary judgment, arguing the court erred in applying Colorado's borrowing statute to determine the correct statute of limitations. Instead of the borrowing statute, Jenkins argued the district court should have applied the Uniform Conflict of Laws—Limitations Act. §§ 13–82–101 to –107, C.R.S. (2008). Jenkins further argued that his negligence claims are substantively based on Colorado law, and therefore under the limitations act, section 13–82–104, Colorado's two year statute of limitations applies. In the alternative, Jenkins argued that even if his negligence claims are found to be substantively based on Panama law, the limitations act's "escape" clause, section 13–82–106, saves him from Panama's one year statute of limitations and applies Colorado's two year statute of limitations. Therefore, his lawsuit brought within two years of the collision is not time-barred.

The court of appeals disagreed with Jenkins's determination of the applicable statute. In a published decision, the panel affirmed the district court's grant of summary judgment. *Jenkins v. Haymore*, 208 P.3d at 269. The court of appeals held the borrowing statute and the limitations act are irreconcilable, and applied three rules of statutory construction to determine which governs: which statute is more specific, which statute was enacted last, and which statute employs the longer limitations period. *Id.* at 268. Without analysis, the court determined the borrowing statute was more specific than the limitations act. *Id.* at 268. It also noted the borrowing statute was enacted later than the limitations act; though the limitations act expressly repealed the borrowing statute when enacted in 1984, the borrowing statute was enacted again in 1986. *Id.* at 267. Finally, the court of appeals declined to address which statute has a longer limitations period, because the conflict could be resolved on specificity and recency. *Id.* at 268.

Jenkins petitioned this court for review of the court of appeals' decision, and both parties focused their arguments on which statute is more specific. We ultimately conclude neither statute is more specific than the other; thus we disagree with the court of appeals' holding that the borrowing statute applies because it is more specific than the limitations act. However, because the borrowing statute was enacted more recently than the limitations act, we hold the borrowing statute was appropriately applied. Therefore, we affirm the court of appeals and hold that summary judgment was proper.

## ANALYSIS

■ A court may grant summary judgment only when the pleadings and supporting documents clearly demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo.2008); *Friedland v. Travelers In-*

*dem. Co.,* 105 P.3d 639, 643 (Colo.2005). In determining whether summary judgment is proper, a court grants the nonmoving party any favorable inferences reasonably drawn from the facts, and resolves all doubts in favor of the nonmoving party. *Lombard,* 187 P.3d at 570; *Friedland,* 105 P.3d at 643. We review grants of summary judgment de novo. *Lombard,* 187 P.3d at 570; *Friedland,* 105 P.3d at 643.

To review the grant of summary judgment in this case, we must determine which of these irreconcilable statutes, the borrowing statute or the limitations act, applies to Jenkins's claims. The borrowing statute applies to a claim arising in another jurisdiction, and imposes that jurisdiction's statute of limitations on the claim. It states:

If a cause of action arises in another state or territory or in a foreign country and, by the laws thereof, an action thereon cannot be maintained in that state, territory, or foreign country by reason of lapse of time, the cause of action shall not be maintained in this state.

§ 13–80–110. If the borrowing statute applies here, Jenkins is bound by Panama's one year statute of limitations, making his action time-barred and summary judgment for Panama Canal proper.

On the other hand, the limitations act imposes different statutes of limitations depending on the substantive law underlying a claim. That is, if a claim is based on another jurisdiction's substantive law, that jurisdiction's statute of limitations applies. But if a claim is based on Colorado's substantive law, Colorado's statute of limitations applies. The act states:

(1) Except as provided in section 13–82–106, if a claim is substantively based:

(a) Upon the law of one other state, the limitation period of that state applies; or

(b) Upon the law of more than one state, the limitation period of one of those states chosen by the law of conflict of laws of this statute applies.

(2) The limitations period of this state applies to all other claims.[1]

§ 13–82–104. If the limitations act applies here, Jenkins may be bound by either Panama's one year statute of limitations or Colorado's two year statute of limitations, depending on whether the substantive law of Panama or Colorado governs his claims.[2]

■ When interpreting statutes, our primary task is to give effect to the General Assembly's intent. *Reg'l Transp. Dist. v. Voss,* 890 P.2d 663, 667 (Colo.1995). To do this, we generally only look to a statute's plain language and interpret the words based on their commonly accepted meanings. *Id.* However, on occasion we look to a statute's legislative history to determine the General Assembly's intent. For example, when a statute's language is ambiguous, we may turn to its legislative history. *Id.* at 667. Likewise, when attempting to harmonize two seemingly conflicting statutes, we may also utilize the statutes' legislative histories. *City of Florence v. Pepper,* 145 P.3d 654, 657 (Colo.2006).

Yet, when considering the borrowing statute and the limitations act, we find neither contains ambiguous language. Additionally, the court of appeals held these statutes are irreconcilable, and neither party appeals that holding. *Jenkins v. Haymore,* 208 P.3d at 268. Because the statutes are not ambiguous and cannot be harmonized, we do not look to their legislative histories to determine the General Assembly's intent. Instead, we turn to the rules of statutory construction for irreconcilable statutes.

■ The General Assembly has prescribed two rules for deciding which of two irreconcilable statutes governs. First, the specific provision prevails over the general provision. § 2–4–205, C.R.S. (2008). This rule applies unless the general statute was enacted more recently than the specific statute, *and* the legislature manifestly intends that the later-enacted general statute prevail over the ear-

---

1. The term "state" in this act includes foreign countries. *See* § 13–82–103(2), C.R.S. (2008).

2. Because we hold the borrowing statute applies, we do not address the substantive law of Jen-

kins's claims, or whether the limitation act's "escape" clause would apply. § 13–82–106, C.R.S. (2008).

lier-enacted specific statute. If these conditions are met, the general statute prevails. *Id.; People v. Smith,* 971 P.2d 1056, 1058 (Colo.1999). However, without the General Assembly's manifest intent, a more recent general statute will not repeal an existing specific statute. *People v. Falls,* 58 P.3d 1140, 1142 (Colo.App.2002) (citing *Martin v. People,* 27 P.3d 846, 863 (Colo.2001)).

■ Second, the statute with the more recent effective date prevails. § 2–4–206, C.R.S. (2008). As explained above, when the more recent statute is a general provision, it cannot prevail over an earlier-enacted specific provision unless the General Assembly manifestly intends it to do so. However, when specificity cannot resolve the conflict, the more recent statute prevails even if the General Assembly did not clearly intend it to supplant an existing statute. *See Pepper,* 145 P.3d at 657, 660. This is because we assume the General Assembly is aware of its enactments, and thus we conclude that by passing an irreconcilable statute at a later date the legislature intended to alter the prior statute. *Id.* at 657. In this situation, recency fails to resolve the conflict only if the irreconcilable statutes have both the same effective date and the same date of passage. § 2–4–206; *see, e.g., Reg'l Transp. Dist.,* 890 P.2d at 668.

■ If neither specificity nor recency can resolve a conflict between two different statutes of limitations, we turn to a third rule of construction supported by our case law and public policy; the statute providing the longer limitations period prevails. *Reg'l Transp. Dist.,* 890 P.2d at 668; *Dawson v. Reider,* 872 P.2d 212, 214 (Colo.1994); *Jones v. Cox,* 828 P.2d 218, 222 (Colo.1992). However, if specificity or recency can resolve the conflict, we do not reach the question of the longer limitations period.

Because a specific earlier-enacted statute may trump a general later-enacted statute if the General Assembly lacked manifest intent for the general later-enacted statute to prevail, we turn to specificity first. Section 2–4–205 explains "the special or local provision prevails as an *exception* to the general provision ...." (emphasis added). Further, in *Martin* we stated, "[a] general provision, by

definition, covers a larger area of the law. A specific provision, on the other hand, acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a specific circumstance." 27 P.3d at 852.

The court of appeals centered its opinion on a determination that the borrowing statute is more specific than the limitations act, but failed to provide explanation or analysis of how the borrowing statute functions as an exception to the limitations act. *Jenkins v. Haymore,* 208 P.3d at 268. Consequently, both parties focus their arguments on specificity. Jenkins argues that the limitations act's "escape" clause, rather than the limitations act itself, is an exception to the borrowing statute. In contrast, Panama Canal argues that the borrowing act is more specific because it applies to cases arising in other jurisdictions, while the limitations act applies to all cases.

■ In order for one statute to function as an exception to another, both statutes must be defined with the same or similar terms. *See Reg'l Transp. Dist.,* 890 P.2d at 668; *Dawson,* 872 P.2d at 214. For example, in *Regional Transportation District,* one of the irreconcilable statutes of limitations applied to actions arising under the No–Fault Act, while the other applied to actions against government entity defendants. We held that because the statutes provided limitations periods based on completely different factors, we could not adequately compare them to determine which functioned as the exception. *Reg'l Transp. Dist.,* 890 P.2d at 668; *see also Dawson,* 872 P.2d at 214. Therefore, we held neither statute could be characterized as more specific than the other. *Reg'l Transp. Dist.,* 890 P.2d at 668.

Either of the statutes at issue here can be portrayed as more specific than the other. First, these statutes address different classes of cases; the limitations act addresses all cases, and the borrowing statute addresses a subset of all cases, those arising in other jurisdictions. This gives rise to Panama Canal's argument that the borrowing statute is more specific; it addresses a smaller group of cases within all cases. On the other hand,

the limitations act contains an "escape" clause, which assigns Colorado's limitations period to cases otherwise subject to another limitations period when that other limitations period would be unfair. § 13–82–106. The escape clause gives rise to Jenkins's argument that the limitations act is more specific; it adds a subjective element to assigning a limitations period not present in the borrowing statute.

■ Despite these portrayals of specificity, the statutes are defined by different terms. The borrowing statute assigns a limitations period based on where a case arose. In contrast, the limitations act assigns a limitations period based on what substantive law applies to a case, along with the fairness doctrine operating in the escape clause. Ultimately, the differing terms prevent either statute from acting as an exception to the other. For example, if the borrowing statute assigned limitations periods for cases arising in other jurisdictions based on each case's substantive law, it would utilize the same terms as the limitations act and could be read as an exception to that act. However, the borrowing statute only assigns limitations periods based on where a case arose, and does not consider the applicable substantive law.[3] Therefore, its terms are different from those of the limitations act. Because each statute uses different factors to assign a limitations period, we are prevented from directly comparing them in order to read one as an exception to the other. Consequently, we hold neither statute is more specific than the other, and we disapprove of the court of appeals' holding that the borrowing statute is more specific than the limitations act.

Because specificity cannot be determined in this case, we turn to recency. Section 2–4–206 explains "if statutes enacted at … different sessions … are irreconcilable, the statute prevails which is latest in its effective date." This directive does not differentiate between an initial enactment and an enactment subsequent to a repeal for purposes of a statute's effective date. § 2–4–206.

The borrowing statute dates back to Colorado's statutes in 1921; it employed other jurisdictions' limitations periods to prevent forum shopping. In 1984, the General Assembly passed the Uniform Conflict of Laws—Limitations Act, which tied limitations periods to Colorado's conflict of laws scheme. See Ch. 113, sec. 1, 1984 Colo. Sess. Laws 477, 477–78. Upon enactment, the limitations act explicitly repealed the borrowing statute. See Ch. 113, sec. 2, 1984 Colo. Sess. Laws 477, 478. Then, in 1986, the General Assembly was persuaded by the Colorado Bar Association's campaign to reform Colorado's limitations system to again enact the borrowing statute in substantial conformity with its previous language. See Ch. 114, sec. 1, § 13–80–110, 1986 Colo. Sess. Laws 695, 700. In this enactment, the legislature did not simultaneously repeal the limitations act or provide any other comment on why it enacted a statute it had repealed in favor of a different scheme two years earlier. Id.

Regardless of this confusion, the current borrowing statute's enactment date is 1986, while the limitations act's enactment date is 1984. Because the recency rule of statutory construction does not differentiate between an initial enactment and an enactment subsequent to a repeal, the borrowing statute, enacted two years after the limitations act, is the more recently enacted of the two.

In general, we hesitate to repeal a statute by implication. *Pepper,* 145 P.3d at 657. Additionally, given the background of these two statutes, it is not at all clear the General Assembly intended the reenacted borrowing statute to supplant the limitations act. However, as discussed above, we assume the General Assembly is aware of its enactments, and thus we understand a more recent enactment that conflicts with a prior enactment to evidence the legislature's intent to alter the prior. *Id.* If the General Assembly made a mistake in reenacting the borrowing statute without considering the effect on the limitations act—as we strongly suspect is the case—that mistake is for the General Assem-

---

**3.** Here, Jenkins's claims arose in Panama, while Panama Canal's counsel conceded during oral argument that Jenkins's claims are substantively based on Colorado law. Thus, this case illustrates that where the case arose and what substantive law applies are terms with different meanings, and possibly, results.

bly to remedy, not this court. Because the conflict between these statutes cannot be resolved on specificity and the borrowing statute is the more recent enactment, we hold the borrowing statute applies to Jenkins's claims in this case. Further, because this conflict is resolved based on the General Assembly's prescribed rules of statutory construction, we do not reach the common law factor of longer limitations period.

## CONCLUSION

We hold the borrowing statute applies to Jenkins's claims. Though neither the borrowing statute nor the limitations act is more specific than the other, the borrowing statute was more recently enacted. As a result, Panama's one year statute of limitations applies to Jenkins's claims. Therefore, because Jenkins brought his action two years after the collision, his suit is time-barred. Accordingly, we affirm the court of appeals' judgment.

JUSTICE HOBBS dissents, and Chief Justice MULLARKEY joins in the dissent.

Justice HOBBS dissents.

I respectfully dissent. Colorado residents Herman and Bebra Jenkins, Rainey and Nathanial Estes, Bonnie Bills, and Travis Law (collectively "Jenkins") sustained injures in a train accident while on vacation in Panama. Jenkins filed this lawsuit in the district court within two years of the injuries. In my view, the majority incorrectly applies Panama's one-year limitations period by invoking the borrowing statute. § 13–80–110, C.R.S. (2008). Instead, Colorado's Uniform Conflict of Laws—Limitations Act ("UCLLA"), sections 13–82–101 to –107, C.R.S. (2008), in particular, the fairness provision of section 13–82–106, should apply to this case to effectuate the General Assembly's policy that a two-year statute of limitations is the shortest period required for filing a personal injury lawsuit. See § 13–80–102, C.R.S. (2008). The UCLLA's fairness provision, section 13–82–106, states that:

If the court determines that the limitation period of another state applicable under sections 13–82–104 and 13–82–105 is sub-

stantially different from the limitation period of this state and has not afforded a fair opportunity to sue upon or imposes an unfair burden in defending against the claim, the limitation period of this state applies.

Thus, the fairness provision allows a court to apply Colorado's limitation period when another state's substantially different limitation period has not afforded a fair opportunity to sue or imposes an unfair burden in defending against the claim. § 13–82–106.

The UCLLA should apply in this case for several reasons: (1) it is the more specific statute because it includes a fairness provision for resolving conflicts between limitations statutes, a provision the more general borrowing statute does not contain, (2) the legislature did not intend for the borrowing statute to prevail over the UCLLA in circumstances such as this case, and (3) fairness and public policy reasons of the General Assembly require such a result.

When a court is faced with irreconcilable statutes, it first considers whether those statutes address the same class of cases, and if they do, then the specific provision prevails over the general one, unless the legislature evidences a manifest intent that the more recently enacted general provision should prevail. § 2–4–205, C.R.S. (2008); *People v. Smith*, 971 P.2d 1056, 1058 (Colo.1999). If specificity fails to resolve the conflict, then the more recent statute may prevail. *See City of Florence v. Pepper*, 145 P.3d 654, 657, 660 (Colo.2006). If neither of these canons resolves the conflict, then public policy and common law doctrine dictate that the statute with the longer limitations period governs. *Reg'l Transp. Dist. v. Voss*, 890 P.2d 663, 668 (Colo.1995); *see Dawson v. Reider*, 872 P.2d 212, 214 (Colo.1994); *see also Jones v. Cox*, 828 P.2d 218, 222 (Colo.1992).

### A. The UCLLA is the More Specific Statute

In my view, the majority is correct in finding that the UCLLA and the borrowing statute are irreconcilable and the court must first ask whether the UCLLA is the more specific statute. The UCLLA and the borrowing statute both address the same class

of cases. Consequently, section 2–4–205 requires us to determine whether the UCLLA is more specific than the borrowing statute. Since the General Assembly has not exhibited any manifest intent that the more general borrowing statute should prevail over the UCLLA, the UCLLA governs the filing of Jenkins' lawsuit.

In drawing its conclusion that the two statutes address different classes of cases, the majority reasons that "the statutes are defined by different terms. The borrowing statute assigns a limitations period based on where a case arose. In contrast, the [UCLLA] assigns a limitations period based on what substantive law applies to a case, along with the fairness doctrine operating in the escape clause." Maj. op. at 243. However, the plain wording of the UCLLA states that it applies when there is a conflict with the statute of limitations law of another "state." Under section 13–82–103(2), C.R.S. (2008), the term "state" includes "a foreign country."[1] So, too, the borrowing statute, section 13–80–110, provides that it applies to a cause of action arising in "a foreign country."

In differentiating the two statutes, the Majority focuses on the General Assembly's specific language. The UCLLA applies "if the claim is substantively based" on the law of another state, while the borrowing statute applies "[i]f a cause of action arises in another state." Yet this language does not differentiate the two statutes. The UCLLA does consider whether a claim is substantively based on another state's law. § 13–82–104. The borrowing statute does the same thing; but, instead of using the words "if a claim is substantively based," it considers whether a claim arises "by the laws [of another state]." § 13–80–110 ("If a cause of action arises in another state or territory or in a foreign country and, *by the laws thereof* . . . .") (emphasis added).

Though the language of the two statutes is different, the meaning of those words is no different. Both consider the laws of foreign states in deciding what statute of limitations applies when a conflict arises. In footnote 3,

the majority, noting concessions made by respondents' counsel, attempts to distinguish the terms of the two statutes by arguing that where the case arose and what substantive law applies "are terms with different meanings." Maj. op. at 243 n. 3. Though this is correct, the majority frames the question incorrectly to conclude the two statutes have differing terms. *Id.* The terms may not be exact matches, but they are similar enough in that both statutes address conflicts of law situations generally, and more specifically, the conflicts of law question at issue here.

Given these similar terms, the fairness provision defines the UCLLA as the more specific of the two statutes because it addresses the General Assembly's overarching fairness concerns by adding an element that is not present in the borrowing statute, thus providing an exception. *See* maj. op. at 242 (noting that "similar terms" are enough for one statute to function as an exception to another). Therefore, the two statutes do not use "different factors to assign a limitations period" as the majority suggests. Maj. op. at 243.

In contrast to the UCLLA, the borrowing statute is more general in its language, simply adopting the limitations period of another state without considering fairness. § 13–80–110. Arguments can be made to portray each statute as more specific than the other, but the General Assembly's insertion of the fairness provision indicates that the UCLLA is the more specific statute. *See* maj. op. at 242.

In my view, the borrowing statute could prevail only if the General Assembly's "manifest intent" demonstrated for the borrowing statute to do so. § 2–4–205. A review of the legislative history demonstrates no such manifest intent.

### B. Legislative History

The National Conference of Commissioners on Uniform State Laws drafted the UCLLA in 1982 and recommended that all states adopt the law. National Conference of Com-

---

1. "State" is defined by section 13–82–103(2), C.R.S. (2008), as "a state, commonwealth, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a foreign country, or a political subdivision of any of them."

missioners on Uniform State Laws, *Uniform Conflict of Laws—Limitations Act* (approved and recommended for enactment in all states, July 30–Aug. 6, 1982). The American Bar Association approved the commission's recommendation at its February 1983 meeting. *Id.* In 1984, Colorado adopted the UCLLA.

Two years earlier, the Colorado Bar Association ("CBA") had begun studying reforms to Colorado's limitations periods and, throughout the hearings on the 1984 bill in the House and Senate, made no objection to repealing the borrowing statute. *CBA Proposal on Statutes of Limitation: Consolidation and Simplification,* 12 Colo. Law. 10 at 1617 (Oct.1983); *see, e.g.,* Hearings on HB 1141 before the House Judiciary Committee, 54th Gen. Assembly, 2nd Reg. Sess. (audio tape, Jan. 12, 1984, at 2:20–2:30 PM). More importantly, no legislator voiced concern over the UCLLA's explicit repeal of the borrowing statute, which had been in effect since 1921. *See, e.g.,* Hearings on HB 1141 before the House Judiciary Committee, 54th Gen. Assembly, 2nd Reg. Sess. (audio tape, Jan. 12, 1984, at 2:20–2:30 PM).

Notably, the CBA had published its proposed recommendations on the consolidation and simplification of Colorado's statutes of limitations in the October 1983 issue of the *Colorado Lawyer:* the year prior to the adoption of the UCLLA. *CBA Proposal on Statutes of Limitation: Consolidation and Simplification,* 12 Colo. Law. 10 at 1617. The 1985 report of Governor Richard Lamm's Special Task Force on Tort Liability and Insurance included the entire proposal, which the General Assembly largely adopted in 1986. *See Liability Insurance and the Law of Torts in Colorado, Problems and Remedies* at F–9 (Jan.1986). These documents do not evidence any intent to negate the UCLLA's applicability. Inexplicably, the borrowing statute appeared in the 1986 bill, and it appears that no one commented on the possibility that it might override the UCLLA. Thus, I respectfully disagree with the majority's assumption that the General Assembly was aware of its prior enactment of the UCLLA and "that by passing an irreconcilable statute at a later date the legislature

intended to alter the prior statute." Maj. op. at 241.

To the contrary, the General Assembly was not made aware of the conflict it created when it re-enacted the borrowing statute two years later as part of a larger statutory scheme. The focus of the 1986 reform of limitation periods was not conflict of laws. Rather, this reform centered on the state's insurance crisis with limitations periods in civil actions but a small part. The blue ribbon task force, created by Governor Lamm and the General Assembly to address Colorado's insurance crisis, *explicitly* concluded that a one-year statute of limitations period was too short because:

(a) It would encourage precipitous filing of lawsuits;

(b) It would be inconsistent with our proposed amendment to C.R.C.P. 11, which places greater responsibility on counsel to ascertain that there is a good basis for the suit;

(c) More than one year is often needed to ascertain the extent of injury and damages;

(d) California has a one-year statute, but so many exceptions have been created that it has become virtually unworkable; and

(e) It is desirable to have a "cooling-off period," which a one-year statute of limitations does not permit.

*Liability Insurance and the Law of Torts in Colorado, Problems and Remedies* at 53.

The General Assembly adopted the UCLLA to address conflict of laws situations such as this. There is no reasonable basis to believe, with regard to the case before us, that the General Assembly intended anything other than a two-year statute of limitations as being applicable to a case such as Jenkins'. Every time since 1984 that it has been asked to specifically consider the length of a personal injury statute of limitations, the General Assembly has chosen a two-year statute as the minimum applicable period. § 13–80–102 (adopting, in 1986, a general two-year limitations period for civil actions).

Applicability of the borrowing statute in the case before us does not comport with the General Assembly's reform goals and con-

flicts with the General Assembly's choice of a two-year limitations period as being the minimum applicable period. *See Reg'l Transp. Dist.*, 890 P.2d at 669; *Jones*, 828 P.2d at 223; § 2–4–201(1)(c), C.R.S. (2008) ("In enacting a statute, it is presumed that ... [a] just and reasonable result is intended.").

In *Regional Transportation District*, we resolved the case in favor of the longer limitations period. 890 P.2d at 668 (recognizing that "because statutes of limitations are in derogation of a presumptively valid claim, a longer period of limitations should prevail where two statutes are arguably applicable"); *see Dawson*, 872 P.2d at 214; *see also Jones*, 828 P.2d at 222. We "buttressed" this conclusion with "notions of fairness." *Reg'l Tramps. Dist.*, 890 P.2d at 669. We observed that plaintiffs "timely notified the RTD of their injuries and of their intent to commence civil proceedings against it. The RTD thus had ample time to prepare to defend itself." *Id.* at 669–70. Thus, we concluded that "[a]lthough the respondents' civil action was filed more than two years after they discovered their injuries, the RTD has not suggested that in this case it was prejudiced." *Id.* at 669–70.

In this case, Jenkins was injured in Panama and refused treatment there because he was required to first sign a release form in Spanish—a language he did not speak—and was not treated until he returned to Colorado. Sophisticated businesses such as defendants, the Panama Canal Railway Company and the Kansas City Southern Railway Company, could reasonably assume the persons injured while utilizing their services would seek some sort of redress for their injuries.

Jenkins, like most tort plaintiffs, had to decide whether to pursue his tort claim, decide where to pursue it, seek out counsel, gather the facts, and file his case. Particularly when the injury occurs in a foreign country, accomplishing this in a short period of time is not what the General Assembly intended. The General Assembly included a fairness provision in the UCLLA to address just such unfairness as exists in this case.

Accordingly, because the UCLLA is the more specific statute and because the General Assembly has concluded that fairness dictates a two-year minimum limitation period on personal injury actions, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE MULLARKEY joins in this dissent.