Monte Dean KELLER, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 99SC270.

Supreme Court of Colorado,
En Banc.

Sept. 18, 2000.

David S. Kaplan, Colorado State Public Defender, Dana Nichols, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

Jeanne M. Smith, District Attorney, Dan S. Wilson, Deputy District Attorney, Elizabeth A. Kirkman, Deputy District Attorney, David J. Young, Deputy District Attorney, Gordon R. Denison, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

In this case, we determine whether the prosecution may withdraw from a plea agreement in response to a defendant's successful motion for a reduction in sentence made in accordance with the provisions of the "boot camp" statute. *See* § 17–27.7–104(2), 6 C.R.S. (1999). The People contend, and the court of appeals agreed, that our decision of *People ex rel. VanMeveren v. District Court,* 195 Colo. 34, 37–38, 575 P.2d 4, 7 (1978), is controlling. We examine the reasoning of *VanMeveren* and determine that it has been supplanted by more recent decisions of this court and, thus, cannot control the resolution of the issue now before us. Reasoning from settled principles of law, we hold that the prosecution will be permitted to withdraw from a plea agreement that has been accepted by the trial court only if it shows that a reduction in sentence amounts to a material and substantial breach of the plea agreement. Because the plea agreement between the parties to this case did not prohibit the defendant from seeking a reduction in sentence pursuant to section 17–27.7–104(2)(a), the court-ordered reduction in Keller's sentence pursuant to section 17–27.7–104(2)(b) was not a breach of the plea agreement. Absent a showing of breach, the prosecutor may not withdraw from this plea agreement.

## I.

In 1996, Monte Dean Keller pleaded guilty to a count of theft, section 18–4–401(2)(c), 6 C.R.S. (1996), and to a separate count of aggravated motor vehicle theft, section 18–4–409(3)(a), 6 C.R.S. (1996). In return for his promise to plead guilty, the People stipulated to an eleven year sentence to the Department of Corrections (DOC) on the aggravated motor vehicle theft charge, which was to run concurrently with an eight year sentence on the theft charge. The plea agreement between the parties was not reduced to writing.

The trial court accepted Keller's pleas of guilty and sentenced him to concurrent terms of eleven and eight years in the DOC. After the court imposed sentence, the district attorney asserted that, by agreeing to a stipulated sentence, Keller had, in effect, waived his right to pursue Crim. P. 35(b) relief. Defense counsel agreed. In their arguments to this court, the People have sought to characterize these statements as an understood part of the plea agreement. However, based on the transcript of the sentencing proceedings and the People's arguments below, we find that there was no express agreement to limit the future availability of Crim. P. 35(b) consideration. Rather, it would appear that the district attorney's post-sentencing remarks merely reflected her belief that a sentence stipulation effectively forecloses Crim. P. 35(b) relief as a matter of law. This view of the district attorney's remarks is supported by the fact that, throughout the

course of the proceedings below, the People have contended that our decision in *People ex rel. VanMeveren v. District Court*, 195 Colo. 34, 37–38, 575 P.2d 4, 7 (1978), compels this very conclusion. In *VanMeveren*, we held that a district attorney must be permitted to withdraw from a plea agreement when a trial court acts within its discretion to reduce or modify a sentence to imprisonment pursuant to Crim. P. 35(b).[1]

On July 11, 1997, the DOC notified Keller of his acceptance into the Regimented Inmate Training Program (RITP), a statutory alternative to imprisonment that allows inmates to participate voluntarily in a military-style boot camp aimed at promoting personal development and self-discipline. *See* §§ 17–27.7–101 to –102, 6 C.R.S. (1999). Keller enrolled in RITP and, by all accounts, excelled within the program.[2] After completing the statutorily mandated period of service and training, *see* § 17–27.7–102(3), Keller was "automatically referred to the sentencing court so that [he could] make a motion for reduction of sentence pursuant to rule 35b of the Colorado rules of criminal procedure." § 17–27.7–104(2)(a), 6 C.R.S. (1999).

The trial court heard Keller's motion for a reduction of sentence on September 29, 1997, and granted the motion that same day. At the hearing, the People objected to the defendant's attempts to secure postconviction relief, arguing that, absent the prosecution's express approval, such relief was barred by *VanMeveren*. The trial court found the People's reliance on *VanMeveren* to be misplaced and ruled that Keller's successful participation in the boot camp program merited a three-year reduction in the governing sentence of eleven years. The trial court subsequently denied the People's motion for reconsideration and the People appealed.[3]

The court of appeals, relying on both *VanMeveren* and our recent decision in *People v. Smith*, 971 P.2d 1056 (Colo.1999), held that the trial court had erred by not affording the district attorney the opportunity to withdraw from the plea agreement. *See People v. Keller*, 985 P.2d 65, 67 (Colo.App.1999). Keller petitioned this court for a writ of certiorari. We granted the petition and now reverse the judgment of the court of appeals.[4]

## II.

Our analysis commences with an overview of the statutory provisions implementing the boot camp program and proceeds to consider the meaning and operation of section 17–27.7–104(2)(a), the subsection that establishes the process by which participants in the program may petition the sentencing court for a reduction in sentence. We then compare the type of relief provided for under the boot camp statute with that which is available under Crim. P. 35(b) and conclude that section 17–27.7–104(2) establishes a special statutory procedure for seeking a reduction in sentence. The final phase of our analysis concerns our decision in *VanMeveren* and the inapplicability of its reasoning to the case at bar. We hold that our

1. *See infra* note 8.

2. The "30–day Progress Report/Assessment" filed by a DOC representative is illustrative of Keller's early performance in the boot camp program. It states, *inter alia*, that "Recruit Keller is an active participant and leader within the classroom" and that "[h]e is one of the top recruits in his platoon...." The performance evaluation submitted to the sentencing court after Keller completed boot camp is similarly laudatory and the court relied heavily on it in arriving at its decision to grant a reduction in sentence pursuant to section 17–27.7–104(2)(b), 6 C.R.S. (1999).

3. Concerned that the time limits for filing an appeal from a final judgment would not be tolled during the pendency of its motion for reconsideration, the People sought interim appellate relief before a ruling on the pending motion could

issue from the trial court. *See People v. Adams*, 905 P.2d 17, 18 (Colo.App.1995). The court of appeals subsequently granted the People's request that the case be remanded to the trial court for the limited purpose of ruling on the motion for reconsideration.

4. The precise issue on which we granted the petition for certiorari is as follows:

Whether the court of appeals erred in holding that, before a trial court may exercise its discretion by granting a Crim. P. 35(b) motion for reduction of sentence filed after a petitioner successfully completes boot camp, a trial court must first allow the district attorney to withdraw an accepted plea agreement under which the petitioner had been serving time in the Department of Corrections.

pronouncements in *VanMeveren* regarding the prosecution's right to withdraw from an accepted plea agreement after a trial court's grant of sentence reductions pursuant to Crim. P. 35(b) do not extend to sentence reductions ordered pursuant to the boot camp statute.

### A.

■ The legislature established the boot camp program in order to effectuate reductions in the prison population and to promote personal development and self-discipline among felony offenders. *See* § 17–27.7–101; *see also Smith,* 971 P.2d at 1060. The boot camp programs are developed and administered by the DOC in accordance with statutory guidelines. *See* §§ 17–27.7–102(1), (2). Although the structure and character of individual boot camp programs may and do vary, the statutory scheme demands that every program incorporate certain elements, such as "military-style intensive physical training and discipline" and various educational components. *Id.* Admittance into the program is selective and participation is limited to nonviolent offenders who are thirty years of age or younger. *See* § 17–27.7–103(1), 6 C.R.S. (1999). Eligible offenders admitted into the boot camp program must successfully complete a ninety-day training regimen in order to qualify for a sentence reduction pursuant to section 17–27.7–104(2).[5] The decision

whether to grant or deny a motion made pursuant to this section necessarily remains within the sound discretion of the sentencing court. *See Smith,* 971 P.2d at 1060.

Although section 17–27.7–104(2)(a) references Crim. P. 35(b), our examination of this procedural rule convinces us that the process provided for under section 17–27.7–104(2) is different, both in kind and substance, from that which typically accompanies a Crim. P. 35(b) application for reduction in sentence.[6] Notably absent from the operative provisions of the boot camp statute are the rigid time limitations set forth under Crim. P. 35(b). Aside from the procedural distinctions outlined in the language of the provisions, the nature of section 17–27.7–104(2) is distinct in that it sets forth a special statutory procedure available only under certain circumstances.

Substantively, the boot camp statute mandates automatic referral to the sentencing court for consideration of sentence reduction within "sixty days of termination or completion of the program." § 17–27.7–104(2)(a). The sixty-day time limit contemplated by section 17–27.7–104(2)(a) does not restrict a defendant's ability to petition for such relief, as does the limitation in Crim. P. 35(b), but rather ensures that the process begins swiftly and advances expeditiously.[7] This comports with the boot camp statute's specifically stated purpose of "reducing prison

---

5. Section 17–27.7–104(2) provides that:

(a) If an offender successfully completes a regimented training program, such offender, within sixty days of termination or completion of the program, shall automatically be referred to the sentencing court so that the offender may make a motion for reduction of sentence pursuant to rule 35b of the Colorado rules of criminal procedure.

(b) The department shall submit a report to the court concerning such offender's performance in the program. Such report may recommend that the offender be placed in a specialized probation or community corrections program. The court may not summarily deny the offender's motion without a complete consideration of all pertinent information provided by the offender, the offender's attorney, and the district attorney. The court may issue an order modifying the offender's sentence and placing the offender in a community corrections program.

6. Crim. P. 35(b) reads:

The court may reduce the sentence provided that a motion for reduction of sentence is filed (1) within 120 days after the sentence is imposed, or (2) within 120 days after receipt by the court of a remittitur issued upon affirmance of the judgment or sentence or dismissal of the appeal, or (3) within 120 days after entry of any order or judgment of the appellate court denying review or having the effect of upholding a judgment of conviction or sentence. The court may, after considering the motion and supporting documents, if any, deny the motion without a hearing. The court may reduce a sentence on its own initiative within any of the above periods of time.

7. Although not in effect during the period in question here, section 17–27.7–104(2)(c)(I), 6 C.R.S. (1999), lends support to this view of the boot camp statute. That subsection states, in relevant part, that "[a]ny motion filed pursuant to paragraph (a) of this subsection (2) shall be given priority for consideration by the sentencing court." § 17–27.7–104(2)(c)(I).

overcrowding" and "promoting . . . the personal development and self-discipline" of offenders. § 17–27.7–101. To the extent that the sixty-day time limitation allows successful participants in the program to be immediately rewarded with sentence reductions, it is intended to reinforce positive behaviors and reduce burgeoning prison populations.

Thus, a defendant seeking a reduction in sentence pursuant to Crim. P. 35(b) and one seeking such a reduction pursuant to section 17–27.7–104(2)(a) are in different postures when prosecuting a motion for postconviction relief. Furthermore, judicial review of motions for reduction in sentence made pursuant to Crim. P. 35(b) differs significantly from the special statutorily defined procedures a sentencing court must follow when presented with a motion for reduction of sentence made pursuant to section 17–27.7–104(2)(a). For instance, section 17–27.7–104(2)(b) provides, in pertinent part, that:

> The court may not summarily deny the offender's motion without a complete consideration of all pertinent information provided by the offender, the offender's attorney, and the district attorney. The court may issue an order modifying the offender's sentence and placing the offender on probation or in a community corrections program.

The process for reviewing postconviction motions submitted in accordance with section 17–27.7–104(2)(a) is both more extensive than the process provided for under Crim. P. 35(b) and less restrictive in terms of the time limitations governing its operation. *Cf. People v. Ellis*, 873 P.2d 22, 23–24 (Colo.App. 1993) (noting statutory requirements imposed by section 17–27.7–104 on courts reviewing Crim. P. 35(b) motions made pursuant to the boot camp statute). Not only does the boot camp statute require courts to consider completely "all pertinent information provided by the offender, the offender's attorney, and the district attorney," it permits sentencing courts to order remedies that would otherwise be unavailable under Crim. P. 35(b) after the expiration of the 120–day time period. *Compare* § 17–27.7–104(2)(b), *with* Crim. P. 35(b). Hence, the boot camp statute makes clear that sentencing courts

are to give special consideration to requests for a reduction in sentence made pursuant to its provisions.

As we recently observed in *Smith*, a case in which we were asked to resolve a conflict between the boot camp statute and certain statutory sentencing provisions, the remedial features of the boot camp statute are designed to give sentencing courts the special authority to reconsider sentences to imprisonment based on evidence of "exemplary behavior in the RITP context." 971 P.2d at 1060. And, although the boot camp statute requires courts to consider many of the same factors and materials that postconviction courts are entitled to consider when reviewing a motion for reduction in sentence made pursuant to Crim. P. 35(b), *see id.* at 1059, our review convinces us that the imperative language of section 17–27.7–104(2) evinces a clear legislative intent to implement a special statutory procedure for considering Crim. P. 35(b) applications for reduction in sentence made by offenders who have successfully completed the boot camp program.

In light of our conclusion that the boot camp statute establishes a special statutory procedure for submission and judicial consideration of motions seeking a reduction in sentence, we must next determine whether the court of appeals correctly concluded that *VanMeveren* places limitations on a trial court's authority to order postconviction relief pursuant to the boot camp statute.

### B.

*VanMeveren* concerned a defendant who had entered into a plea agreement containing a stipulation as to the sentencing range. The trial court approved the plea agreement and sentenced the defendant to a term of imprisonment in accordance with the stipulated range. The defendant thereafter sought, and was granted, a reduction in sentence pursuant to Crim. P. 35. The prosecution objected, complaining, in essence, that the reduction violated its agreement with the defendant.

One of the questions then before us on certiorari was: "Can the district attorney prevent the trial judge from modifying a

sentence pursuant to [Crim. P. 35(b) ][8] when the original sentence was imposed pursuant to a plea agreement?" *VanMeveren,* 195 Colo. at 36, 575 P.2d at 6. We first rejected as meritless the prosecution's "contention that a sentence imposed by reason of a plea agreement is set in concrete and cannot be changed." *Id.* at 37, 575 P.2d at 6. We specifically noted that:

> The case law authorities which permit a plea agreement to be enforced by a defendant may not be interpreted to foreclose the discretion of the trial judge or the obligations of the Executive or Legislative branches of government to carry out a correction program.

*Id.* at 37, 575 P.2d at 7 (citing cases). This court, however, proceeded to hold that, in cases where a trial court exercises its discretion under Crim. P. 35 to modify or reduce a sentence imposed pursuant to a plea agreement, "the district attorney must be permitted, in his discretion, to withdraw from the plea agreement, reinstate the charges which were dismissed, and proceed to trial as though no agreement had been made." *Id.* at 38, 575 P.2d at 7. We opined that this "conclusion affords the trial court the utmost discretion in the sentencing process and also recognizes that the prosecution ... dismissed charges because of a plea bargain which was approved by the court." *Id.*

### III.

The case before us presents the question whether *VanMeveren's* holding should apply in cases where a defendant under a stipulated sentence has petitioned for and received a reduction in sentence pursuant to section 17–27.7–104(2). The court of appeals concluded that *VanMeveren* controls the analysis of this case. The panel accordingly ordered that the case be remanded to the sentencing court so that the prosecution could be given the opportunity to withdraw

from its agreement with Keller. We disagree with the court of appeals' analysis.

Reasoning from settled principles of law, we establish an appropriate framework for analyzing a district attorney's claim that she should be permitted to withdraw from an accepted plea agreement on the grounds that the defendant has violated its terms. Applying this framework to the instant case, we conclude that there exists no basis for allowing the district attorney to withdraw from the plea agreement.

### A.

First, the *VanMeveren* decision was rendered with respect to a request for modification of sentence pursuant to Crim. P. 35(b). In Keller, the issue raised is specific to the boot camp statute, not the general sentence modification provisions of Crim. P. 35(b). As previously noted, we find that the boot camp statute is separate and distinct from Crim. P. 35(b) in both form and substance, and thus, are not inclined to follow the reasoning of *VanMeveren* in interpreting the effect of the boot camp statute sentence modification provision with respect to the plea agreement in this case.

■ Second, and more importantly, our more recent decisions with respect to plea agreements reflect our adherence to the general view that plea agreements are contractual in nature and should be interpreted in accordance with contract principles. *See People v. Johnson,* 999 P.2d 825, 829 (Colo.2000). Although the analytical underpinnings in *VanMeveren* suggest a potential contract analysis with respect to a prosecutor's ability to withdraw from a plea agreement, the rationale for the outcome of *VanMeveren* is not fully explained in the decision. Specifically, the *VanMeveren* court relied upon three cases in support of

**8.** At the time of our decision of *VanMeveren,* Crim. P. 35(a) contained the operative language granting trial courts the discretionary authority to reduce or modify sentences to imprisonment. In 1979, the sentence reduction provisions of Crim. P. 35(a) were excised and placed under a separate subsection (b) of the rule. *See People v. Fuqua,* 764 P.2d 56, 58 (Colo.1988) (reciting history of Crim. P. 35). Although we decided

*VanMeveren* in the context of Crim. P. 35(a), we note that the differences between the sentence reduction provisions of the former Crim. P. 35(a) and those codified under the present Crim. P. 35(b) do not bear on our analysis of the case currently before us. We therefore refer only to Crim. P. 35(b) when discussing *VanMeveren* and its application to the instant case.

its central holding: *People v. Sandoval,* 188 Colo. 431, 535 P.2d 1120 (1975); *People v. Murdock,* 187 Colo. 418, 532 P.2d 43 (1975); and *People v. Mason,* 176 Colo. 544, 491 P.2d 1383 (1971). These three cases all turn on similar facts: a defendant convicted pursuant to a plea agreement is later permitted to withdraw from the agreement on the grounds that his guilty plea was rendered involuntary and unintelligent as a result of a defective Crim. P. 11 advisement. The rule that arises from these cases is simply that the prosecution must be permitted to reinitiate criminal proceedings against defendants whose convictions have been vacated as a result of a constitutionally deficient advisement. *See Sandoval,* 188 Colo. at 434, 535 P.2d at 1122; *Murdock,* 187 Colo. at 420–21, 532 P.2d at 44; *Mason,* 176 Colo. at 546, 491 P.2d at 1384. Other decisions of this court explain that we allow a defendant to withdraw from a plea agreement if her initial plea does not comport with fundamental notions of due process and is constitutionally ineffective. *See Craig v. People,* 986 P.2d 951, 964 (Colo.1999); *Chae v. People,* 780 P.2d 481, 486 (Colo.1989); *People v. Wright,* 194 Colo. 448, 450, 573 P.2d 551, 553 (1978). A defendant in this position accordingly returns to the status quo ante upon withdrawal of her involuntary plea and may be charged anew.

The requirement that a *defendant* must be permitted to withdraw from a plea agreement that has been rendered invalid as a result of a trial court's constitutionally defective advisement does not, of course, compel the separate conclusion that a *prosecutor* should be allowed to withdraw from a plea agreement when a trial court has acted within its discretion to reduce a sentence originally imposed in accordance with a sentence stipulation.[9] Indeed, we have recognized only two bases for allowing the prosecution to withdraw from an accepted plea agreement: (1) where the parties have entered into a plea agreement that provides for an illegal sentence, *see Chae,* 780 P.2d at 485–86; and, (2) where the defendant has materially and substantially breached the plea agreement by her action or inaction. *See People v. McCormick,* 859 P.2d 846, 856–57 (Colo. 1993); *see also St. James v. People,* 948 P.2d 1028, 1032 (Colo.1997) (applying *McCormick*). Here, we are concerned only with the second scenario.

We discussed the implications of a defendant's breach of an express condition of a plea agreement, and the prosecutor's remedy for such a breach, in *White v. District Court,* 695 P.2d 1133 (Colo.1984). In *White,* the defendant agreed, as an express condition of the plea agreement, to testify as a prosecution witness against a co-defendant, and subsequently refused to testify. We concluded that where an express condition of a plea agreement has been breached by the defendant, an appropriate remedy is the prosecution's withdrawal from the agreement and reinstatement of the initial charges. Moreover, our decision in White established that once a district court approves a plea agreement containing an express condition, that court retains jurisdiction over the plea agreement in accordance with section 16–7–302(3) until the condition has been satisfied. *See id.* at 1136.

Our reliance in *VanMeveren* upon a line of cases concerning inadequate advisements to determine when the prosecution may withdraw from a plea agreement is not in accord with our approach to these issues. Therefore, rather than reconstruct the analysis in *VanMeveren* and rely on unexpressed reasoning, we look to our decisions discussing the contractual nature of plea agreements for guidance in analyzing this case.

Finally, we note that our assertion in *VanMeveren* that the result reached "affords the trial court the utmost discretion in the sentencing process" is inconsistent with our understanding of the respective roles of trial courts and prosecutors in the area of sen-

9. Section 16–7–302(2), 6 C.R.S. (1999) and Crim. P. 32(d) specifically provide for a defendant's withdrawal from a plea agreement under certain circumstances. Significantly, neither our statutes nor our rules of criminal procedure include provisions for the prosecution's withdrawal from a plea agreement. Section 16–7–302(3), however, provides that "[n]otwithstanding the reaching of a plea agreement ... the judge in every case should exercise an independent judgment in deciding whether to grant charge and sentence concessions." § 16–7–302(3), 6 C.R.S. (1999).

tencing. *VanMeveren,* 195 Colo. at 38, 575 P.2d at 7. *See also People v. Pate,* 878 P.2d 685, 694 (Colo.1994) ("It is axiomatic that the judiciary has the exclusive power to impose sentences which fall within the limits determined by the General Assembly.") (citing cases). While preserving the discretionary authority of trial courts in theory, but not in effect, *VanMeveren* does not analyze whether an agreement has been breached. Thus, *VanMeveren* creates a rule that actually diminishes the power of trial courts to reduce or modify sentences of imprisonment. We therefore cannot agree with the rationale underlying the *VanMeveren* court's decision.

As we explain below, this court has recognized that contractual principles form the primary basis for allowing a prosecutor to withdraw from a plea agreement. Accordingly, to the extent that our pronouncements in *VanMeveren* are inconsistent with our present approach, our holding in that case and its reasoning cannot guide our resolution of the issue now before us.

### B.

 The general rule subscribed to by virtually every court is that prosecutors are not permitted to withdraw from plea agreements after their acceptance. *See* 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.2(f), at 95 (2d ed.1999); 2 Charles E. Torcia, *Wharton's Criminal Procedure* § 312, at 392 (13 th ed.1990). However, in recent years, courts have tempered this rule by allowing prosecutors to argue for withdrawal from an accepted plea agreement under a contractual theory of breach. *See* La-Fave, *supra,* § 21.5(e), at 212–13, 217; James E. Bond, *Plea Bargaining and Guilty Pleas* § 7.18(f), at 7–53 (2d ed.1983). In order for a court to conclude that withdrawal from the plea agreement and reinstatement of charges are warranted under the circumstances, a district attorney must show that the ordered sentence reduction amounted to a material and substantial breach of the plea agreement. *See, e.g., McCormick,* 859 P.2d at 857

(cataloging cases); *accord People v. Johnson,* 999 P.2d 825, 829–30 (Colo.2000); *St. James* 948 P.2d at 1032. A defendant will be deemed to have materially and substantially breached a plea agreement if a court concludes that the defendant's action or inaction stands in violation of a "central component" of the plea agreement. *McCormick,* 859 P.2d at 858.

 When assessing a claim of breach, a reviewing court must begin by examining the plea agreement in an effort to determine its meaning. *See Johnson,* 999 P.2d at 829; *Craig,* 986 P.2d at 960–61; *Benavidez v. People,* 986 P.2d 943, 948 (Colo.1999); *People v. Romero,* 745 P.2d 1003, 1010 (Colo.1987). Since "[t]he proper interpretation of a plea agreement is 'strictly a question of law,'" the respective obligations of the parties to the agreement are subject to de novo review in this court. *Craig,* 986 P.2d at 960 (quoting *St. James,* 948 P.2d at 1030). In interpreting a plea agreement, we will not assume that the parties have agreed that a defendant will forego the opportunity to petition for post-conviction relief, absent evidence of an affirmative waiver of the right to pursue such relief. *See, e.g., United States v. Sandoval-Lopez,* 122 F.3d 797, 800 (9th Cir.1997); *see also People v. Gurule,* 748 P.2d 1329, 1331 (Colo.App.1987). Furthermore, when confronted with ambiguity in a plea agreement, the ambiguous terms must be construed in favor of the defendant and against the government. *See Craig,* 986 P.2d at 962.[10] We apply this approach to determine the terms of an agreement, which, in turn, allows us to discern whether the agreement has been breached by the defendant.

### IV.

 We look to the terms of the plea agreement at issue in this case in order to decide whether the prosecutor may withdraw from its agreement with Keller. As previously mentioned, the plea agreement be-

---

10. This practice accords with the position taken by a number of other jurisdictions. *See Humphrey v. State,* 686 So.2d 560, 562 (Ala.Crim.App. 1996); *Gaston v. United States,* 535 A.2d 893, 898 n. 9 (D.C.1988); *State v. Wills,* 244 Kan. 62, 765 P.2d 1114, 1118 (1988); *State v. Serstock,* 402 N.W.2d 514, 516 (Minn.1987); *State v. Mares,* 119 N.M. 48, 888 P.2d 930, 932 (1995); *Commonwealth v. Kroh,* 440 Pa.Super. 1, 654 A.2d 1168, 1172 (1995).

tween Keller and the People was not reduced to writing. Our review of the relevant portions of the record convinces us that the agreement is silent as to the issue of sentence reduction. Although we have indicated that it is appropriate to look to the advisement for " 'extrinsic evidence relating to the circumstances of the government's dealings with the defendant' " when confronted with ambiguity in the written plea documents, *Craig*, 986 P.2d at 961 (quoting *Romero*, 745 P.2d at 1010), we will not allow oral statements entered on the record after sentencing to modify the terms of an agreement. The various safeguards set forth under Crim. P. 11 are designed to eliminate the element of surprise from plea negotiations. Allowing statements made after the entry of the guilty plea to enter into our determination of a plea agreement's meaning runs counter to Crim. P. 11. Additionally, a trial court must be informed of the entire agreement between the parties before determining whether to accept the agreement. *See* § 16–7–301(4)(a)(I), 6 C.R.S. (1999).

The prosecution's statement that Keller had agreed, in effect, to waive future Crim. P. 35(b) consideration, although acquiesced to by defense counsel, cannot be regarded as part of the agreement, for no mention of that term was made before imposition of sentence. Yet, even if we were to conclude that the parties had reached an agreement concerning the future availability of Crim. P. 35(b) relief, we will not interpret the prosecution's statements regarding Crim. P. 35(b) so as to preclude Keller from seeking a reduction in sentence pursuant to section 17–27.7–104(2)(a) of the boot camp statute. The boot camp statute is a special statutory procedure for seeking a reduction in sentence.

We conclude that the plea agreement between the parties in this case did not contain a provision regarding the future availability of sentence reduction pursuant to the boot camp statute. Thus, we need not proceed further with our analysis to conclude that there has been no breach of the agreement. We accordingly hold that the prosecutor may not withdraw from the plea agreement.

V.

We hold that a prosecutor may not withdraw from a plea agreement containing a stipulated sentence when a trial court acts within its discretion to reduce the sentence pursuant to section 17–27.7–104(2) of the boot camp statute. We also conclude that the reasoning underlying our decision of *VanMeveren* has been supplanted by more recent decisions of this court concerning a prosecutor's right to withdraw from an accepted plea agreement. We therefore decline to apply *VanMeveren* to the issue before us. Applying settled principles of law, we conclude that the sentence stipulation contained in the plea agreement does not preclude Keller from seeking a reduction in sentence pursuant to the remedial provisions of the boot camp statute. Because the plea agreement did not foreclose the future possibility of a reduction in sentence, the ordered sentence reduction could not amount to a material and substantial breach of the plea agreement between the parties. Absent a finding that Keller has materially and substantially breached the plea agreement, the district attorney cannot be allowed to withdraw from an accepted agreement and reinitiate criminal proceedings. Accordingly, we reverse the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.