JUSTICE SAMOUR delivered the Opinion of the Court.
¶1 "[C]riminal justice today is for the most part a system of pleas, not a system of trials." Lafler v. Cooper , 566 U.S. 156, 170, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). Nowhere is this more apparent than in the U.S. Supreme Court's recent estimation that "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." Missouri v. Frye , 566 U.S. 134, 143, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). Against this backdrop, *303 we must determine whether the People are entitled to withdraw from a plea agreement where, following the defendant's guilty plea, the trial court determines that a more lenient sentence than the one the parties set forth in the agreement is appropriate. Because the statute and the rules governing plea agreements in Colorado, section 16-7-302(2) - (3), C.R.S. (2018), Crim. P. 11(f)(5), and Crim. P. 32(d) ("the statute and rules"), allow the defendant, but not the People, to withdraw from a plea agreement when the trial court rejects a sentence concession after accepting the guilty plea, we answer the question in the negative.[1]
¶2 The statute and rules require the trial court to exercise its independent judgment in deciding whether to adopt or reject sentence concessions. Consistent with this authority, we reiterate what we made clear more than four decades ago: Regardless of what label the parties may attach to sentence concessions in a plea agreement-be it "sentence stipulations," "sentence agreements," or something else-they are nothing more than sentence recommendations that the trial court, in the exercise of its independent judgment, may adopt or reject. And if the court rejects a sentence concession after a defendant pleads guilty, the statute and rules allow the defendant-and only the defendant-to withdraw from the plea agreement.
¶3 We recognize that we have sometimes applied general principles of contract law in analyzing plea agreements in the past. But here, we do not address a situation in which a party has allegedly breached a plea agreement.[2] Instead, the question we confront is whether the People may withdraw from a plea agreement when the trial court, in the exercise of its discretion, rejects a sentence concession in the agreement after accepting the defendant's guilty plea. Based on the statute and rules, we hold that the People may not do so.
¶4 We are not persuaded by the People's argument that a trial court violates the separation-of-powers doctrine when it accepts a guilty plea to an uncharged offense pursuant to a plea agreement but then rejects the parties' stipulated sentence without allowing the People to withdraw from the agreement. The People, not trial courts, provide the opportunity for a defendant to plead guilty to an uncharged offense as part of a plea agreement. And when defendants take advantage of such an opportunity, the trial courts, not the People, determine the appropriate sentence. The separation-of-powers doctrine requires nothing more.
¶5 The Achilles' heel of the People's separation-of-powers contention is that it assumes that a trial court's acceptance of a guilty plea pursuant to a plea agreement is contingent on the trial court's subsequent adoption of the sentence concessions in the agreement. The statute and rules belie such an assumption. Under the statute and rules, when the People create an opportunity for a defendant to plead guilty to an uncharged offense as part of a plea agreement, any sentence concessions in the agreement are mere recommendations that the trial court may accept or reject, and if the trial court rejects a sentence concession after the defendant pleads guilty, only the defendant may withdraw from the plea agreement. Because the statute and rules allowed only Mazzarelli to withdraw from the plea agreement after he pled guilty and the court rejected the sentence concession in the agreement, and because the People do not question the constitutionality of the statute and rules, we reject the separation-of-powers claim.
¶6 The court of appeals in this case upheld the trial court's refusal to allow the People to withdraw from the plea agreement after Mazzarelli pled guilty. We affirm its judgment. But we do so for markedly different reasons-our holding takes root in the statute and rules. Given this determination, we decline to address the merits of the conclusions reached by the court of appeals with respect to the two remaining issues on which *304 we granted certiorari review.[3] Instead, we vacate its opinion in its entirety.
I. Facts and Procedural History
¶7 The People charged Christopher Anthon Mazzarelli with knowing or reckless child abuse resulting in serious bodily injury to his infant son, a class 3 felony. See § 18-6-401(1)(a), (7)(a)(III), C.R.S. (2018). The underlying factual allegations involved shaken-baby syndrome.
¶8 Mazzarelli and the People executed a plea agreement, which indicated that he wished to plead guilty to an added charge of criminally negligent child abuse resulting in serious bodily injury, a class 4 felony. See § 18-6-401(1)(a), (7)(a)(IV). In exchange for Mazzarelli's guilty plea, the prosecution agreed to dismiss the original charge. The parties further agreed as follows with respect to the sentence:
The sentence will be a Department of Corrections Sentence within the Extraordinary Risk Crime Range of 2 to 8 years. Both sides are free to argue as to [the] actual amount of incarceration the Court should impose.
The plea agreement also included a clause that permitted Mazzarelli to withdraw from the agreement:
I understand that any sentence imposed by the judge must conform to [the] agreement. If, after I plead guilty, the judge decides not to accept the sentence recommendation or limitation, I will have the right to withdraw my guilty plea and have a trial.
¶9 During a hearing, Mazzarelli's counsel informed the court that the parties had reached a plea agreement. She explained the terms of the agreement, including the "stipulation for prison ... between two and eight years." Following an advisement of his rights pursuant to Crim. P. 11(b), Mazzarelli pled guilty to the added charge and the court accepted his plea and granted the People's motion to dismiss the original charge. The court then postponed sentencing pending completion of a presentence report by the probation department.
¶10 At the sentencing hearing, the prosecutor acknowledged that Mazzarelli's son did not have any permanent injuries, but nevertheless urged the court to impose a sentence consistent with the plea agreement. The court expressed reluctance to punish Mazzarelli with imprisonment for "what might have happened." It also articulated concerns about sending Mazzarelli to prison based on its knowledge of the "great strides and progress" he had made in a related dependency and neglect proceeding and the substantial impact that such a sentence would have on his fifteen-month-old son. At the end of its comments, the court announced that it was "not going to accept the plea agreement" because it was "not willing to send [Mazzarelli] to prison." The court noted, however, that it would accept a plea agreement with "an open sentence" with potential placement in community corrections. Given this decision, the court asked the prosecutor if she wished to withdraw from the plea agreement. The prosecutor asked for a week to consider how to proceed, and the court granted her request and scheduled a new hearing on the next available date.
¶11 The day before the new hearing took place, Mazzarelli filed a motion requesting the appointment of a special prosecutor, arguing that the prosecutor had made "blatantly false" statements during the previous hearing about the child-abuse incident. At the hearing held the following day, the prosecutor admitted she had misspoken and attempted to clarify the alleged misstatements.
*305 She apologized, opposed Mazzarelli's motion for a special prosecutor, and asked to withdraw from the plea agreement. The trial court found that the prosecutor's misstatements amounted to prosecutorial misconduct and denied her request to withdraw from the plea agreement as a sanction. Accordingly, the court moved forward with the sentencing hearing and sentenced Mazzarelli to supervised probation for a period of three years, instead of the agreed-upon prison sentence.
¶12 The People appealed. A division of the court of appeals ruled that, "regardless of the trial court's sanction, the People were not entitled to withdraw from the plea agreement" and the trial court "had discretion to sentence Mazzarelli outside the terms of the stipulated sentencing range." People v. Mazzarelli , 2016 COA 35, ¶¶ 9, 33, 446 P.3d 821. The division gave four reasons for its ruling. First, it found that the trial court had accepted Mazzarelli's guilty plea, but had never agreed to be bound by the sentence recommendation in the plea agreement. Id. at ¶ 25. Second, the division noted that when the trial court accepted Mazzarelli's guilty plea, it had not yet received, much less reviewed, the presentence report. Id. at ¶ 26. The division reasoned that a trial court can only be bound by sentencing concessions in a plea agreement if they are supported by the presentence report. Id. Third, it pointed out that the People had not alleged that Mazzarelli "materially and substantially breached the plea agreement." Id. at ¶ 33 (quoting Keller v. People , 29 P.3d 290, 297 (Colo. 2000) ). According to the division, the People may not withdraw from a plea agreement after "acceptance of the entirety of the ... agreement," unless there is a sentence reduction that amounts to " 'a material and substantial breach of the plea agreement.' " Id. at ¶ 31 (quoting Keller , 29 P.3d at 297 ). Finally, the division explained that the prosecutor's misconduct led to the denial of her request to withdraw from the plea agreement. Id. at ¶ 28. Thus, the division affirmed the trial court's order.
II. Analysis
¶13 Like the division, we conclude that the trial court correctly refused to allow the People to withdraw from the plea agreement. But we do so for different reasons-our decision rests on the statute and rules.
¶14 We first examine the statute and rules in detail. We then discuss our caselaw in this area. And we end by rejecting the People's separation-of-powers claim.
A. The Statute and Rules Do Not Support the People's Position
¶15 Section 16-7-302(3) provides that, "[n]otwithstanding the reaching of a plea agreement between the district attorney and defense counsel or defendant, the judge in every case should exercise an independent judgment in deciding whether to grant ... sentence concessions." Crim. P. 11(f)(5) contains an identical mandate. Therefore, under section 16-7-302(3) and Rule 11(f)(5), the trial court is always required to exercise its independent judgment in determining whether to go along with or diverge from the "sentence concessions" in a plea agreement.[4] This is not surprising given what is at stake. Allowing the parties in a criminal case to require the judge to impose a particular sentence, regardless of whether she believes it is appropriate, justified, or fair, would bode ill for our criminal justice system. It is imperative that the trial court exercise its independent judgment in determining whether to adopt the sentence concessions in a plea agreement.
¶16 The question then is what options, if any, are available to the parties if, in the exercise of its independent judgment, the court rejects a sentence concession in a plea agreement after a defendant pleads guilty? Crim. P. 32(d) requires the court to "advise the defendant and the district attorney" that it is rejecting the sentence concession "and then call upon the defendant to either affirm or withdraw the plea of guilty." (Emphasis added.) Section 16-7-302(2) substantially mirrors Crim. P. 32(d). Significantly, neither section 16-7-302(2) nor Rule 32(d) contains a *306 similar provision allowing the People to affirm the plea agreement or withdraw from it.[5] This omission is telling because the statute and the rule expressly refer to the People elsewhere. Of particular relevance here, they both direct the trial court to advise the defendant and the People whenever it decides to reject a sentence concession after the defendant has pled guilty. Yet, in the very next part of that sentence, the statute and the rule provide that the defendant may then withdraw from the plea agreement.
¶17 Subsection (2) of section 16-7-302 confirms that the legislature did not intend to permit the People to withdraw from a plea agreement when the trial court rejects a sentence concession after the defendant has pled guilty. That subsection delineates the course of action the People may take in the event they are concerned that the court will disagree with a sentence concession in a plea agreement after the defendant pleads guilty:
If a tentative plea agreement has been reached which contemplates entry of a plea of guilty ... in the expectation that ... sentence concessions will be granted, the trial judge may, upon request of the parties, permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the district attorney and defense counsel or defendant whether he will concur in the proposed disposition if the information in the presentence report is consistent with representations made to him.
§ 16-7-302(2).[6]
¶18 The People mistakenly view sentence concessions in a plea agreement as becoming binding on the trial court after the defendant pleads guilty. It is true that subsections (2) and (3) of section 16-7-302, as well as Crim. P. 11(f)(5) and Crim. P. 32(d), refer to "sentence concessions" in plea agreements. But, in the context of plea agreements, we have equated that term with "sentence recommendations" that have no binding effect on the trial court:
[F]ailure to equate sentence concessions with sentence recommendations[ ] renders reference to sentence concessions in [ Crim. P. 32(d) ] meaningless. ... [A] district attorney, as part of a plea bargain, can only agree to make favorable recommendations concerning the sentence. The reference in [ Rule 32(d) ] to "sentence concessions ..." is, therefore, a reference to sentence recommendations by the district attorney.
People v. Wright , 194 Colo. 448, 573 P.2d 551, 552-53 (1978) (citation omitted).[7]
¶19 In Wright , we declined the People's invitation to draw a distinction "between a prosecutorial recommendation of a particular sentence[ ] and a prosecutorial agreement" to require the court to impose a particular sentence. Id. at 552 (emphases added). Instead, we equated a sentence concession with a sentence recommendation because the *307 drafters of Rule 32(d) and Rule 11(f)(2)(I) did the same. Id. at 552-53. And even after we equated "sentence concessions" with "sentence recommendations" in Wright , the legislature has continued to use "sentence concessions" in section 16-7-302. See § 16-7-302(2) - (3).
¶20 We now reiterate that, in the context of plea agreements, "sentence stipulations," "sentence agreements," "sentence concessions," and other similar terms are nothing more than sentence recommendations that the trial court is free to accept or reject, including after the defendant's guilty plea. This conclusion at once (1) honors the intent of the drafters of the statute and the rules and (2) recognizes the trial court's obligation to exercise independent judgment in imposing a sentence pursuant to a plea agreement.
¶21 Relying on Crim. P. 11(b)(5), though, the People assert that when the trial court accepted Mazzarelli's guilty plea, it agreed to be bound by the plea agreement's terms, including the stipulated sentence, so long as the presentence report supported the imposition of that sentence. The People misread Rule 11(b)(5).
¶22 Rule 11(b)(5) requires a trial court to determine, before accepting a guilty plea , that the defendant understands that the court is not "bound by any representations made to [him] by anyone concerning the penalty to be imposed ..., unless such representations are included in a formal plea agreement approved by the court and supported by the findings of the presentence report." The thrust of Rule 11(b)(5) is to ensure that the defendant is aware that any representations made to him regarding the potential sentence will have no effect during the sentencing hearing unless they are included in the plea agreement. In other words, a sentencing representation that is not mentioned in the plea agreement is of no consequence. Contrary to the People's assertion, this does not mean that, following a guilty plea , a trial court is required either to adopt every sentence concession included in the plea agreement or to afford both parties an opportunity to withdraw from the agreement.
¶23 The People's construction of Rule 11(b)(5) clashes with the plain meaning of Rule 11(f)(5) and section 16-7-302(3), both of which require the trial court to "exercise an independent judgment" in deciding whether to adopt or reject a sentence concession in a plea agreement. It is also incompatible with the plain meaning of Rule 32(d) and section 16-7-302(2), both of which mention only the defendant as a party that may withdraw from a plea agreement following his guilty plea. Rather than embrace the People's discordant construction of Rule 11(b)(5), we consider the statute and rules together, and "give consistent, harmonious, and sensible effect to all of [their] parts," UMB Bank, N.A. v. Landmark Towers Ass'n, Inc ., 2017 CO 107, ¶ 22, 408 P.3d 836, 840, avoiding any interpretation that "render[s] certain words or provisions superfluous or ineffective," Kinder Morgan CO2 Co. v. Montezuma Cty. Bd. of Comm'rs , 2017 CO 72, ¶ 24, 396 P.3d 657, 664. See also Indus. Claim Appeals Office v. Zarlingo , 57 P.3d 736, 737 (Colo. 2002) ("As with statutes, specific and general rules of court should be construed harmoniously where possible.").
¶24 To recap, we conclude that the statute and rules (1) require the trial court to exercise its independent judgment in deciding whether to accept or reject sentence concessions in a plea agreement, and (2) allow the defendant, but not the People, to withdraw from a plea agreement when the trial court rejects a sentence concession after the defendant has pled guilty. Therefore, we hold that the trial court did not err in precluding the People from withdrawing from the plea agreement after Mazzarelli pled guilty.
B. Our Caselaw Does Not Alter Our Conclusion
¶25 We recognize that we said in Keller v. People that there are limited "bases for allowing the prosecution to withdraw from an accepted plea agreement," such as "where the defendant has materially and substantially breached the plea agreement by her action or inaction." 29 P.3d at 296. But Keller is factually distinguishable. There, we determined "whether the prosecution may withdraw *308 from a plea agreement in response to a defendant's successful motion for a reduction" of the sentence imposed in accordance with the parties' plea agreement. Id. at 291. Here, there is no allegation that Mazzarelli breached the plea agreement by his actions or inactions. Rather, the trial court, on its own, rejected the sentence concession in the plea agreement after Mazzarelli pled guilty.
¶26 That we have adhered to general principles of contract law in analyzing plea agreements in some cases in the past, see id. at 297-98, does not affect our analysis either. Like Keller , those cases involved a party's alleged breach of a plea agreement. See, e.g. , People v. McCormick , 859 P.2d 846, 856-57 (Colo. 1993). Today we simply conclude that when the trial court rejects a sentence concession in a plea agreement after accepting the defendant's guilty plea, the statute and rules do not permit the People to withdraw from the agreement. Our court has never applied general principles of contract law under these circumstances to allow the People to withdraw from the plea agreement-i.e., to force the defendant to withdraw his guilty plea.
¶27 Because we do not resolve this appeal based on contract law, our decision does not hinge on the specific terms of Mazzarelli's plea agreement or the wording used to express those terms. Rather, it is tethered to the statute and rules. Consequently, we reject Mazzarelli's assertion that the People can always add a provision in a plea agreement that expressly allows them to withdraw from it after entry of the guilty plea in the event the court disagrees with the parties' sentence concessions.[8] There is simply no authority that permits the People to withdraw from a plea agreement when the trial court rejects a sentence concession after the defendant has entered a guilty plea. And the parties cannot negotiate or bargain for that which is not permitted by the statute and rules.
C. The People's Separation-of-Powers Argument Is Untenable
¶28 The People acknowledge the statute and rules. But they nevertheless posit that when a trial court rejects a stipulated sentence in a plea agreement after the defendant has pled guilty, they must be allowed to withdraw from the agreement based on separation-of-powers principles. The separation-of-powers doctrine, assert the People, affords them sole discretion to make charging decisions, including to offer a defendant the opportunity to plead guilty to an uncharged offense in exchange for a stipulated sentence. Thus, they maintain that when a trial court accepts a defendant's guilty plea to an uncharged offense pursuant to a plea agreement but then rejects the stipulated sentence without allowing them to withdraw from the agreement, it usurps their charging province and offends fundamental separation-of-powers precepts. We are unpersuaded.
¶29 Article III of the Colorado Constitution provides that the powers of the state government are divided into three different branches-the legislative, executive, and judicial branches-and that "no person ... charged with the exercise of powers properly belonging to one ... shall exercise any power properly belonging to either of the others," unless expressly directed or permitted by the Colorado Constitution. Put simply, one branch of government may not invade another's role. Article III proves problematic here, according to the People, because the trial court accepted Mazzarelli's guilty plea to an uncharged offense pursuant to the plea agreement but then rejected the stipulated sentence without allowing them to withdraw from the agreement.
¶30 We conclude that no violation of the separation-of-powers doctrine occurred. Mazzarelli pled guilty to an uncharged offense pursuant to the People's plea offer. At the sentencing hearing, the trial court exercised its independent judgment and decided to reject the sentence concession in the plea agreement. Because Mazzarelli, through his counsel, affirmed the guilty plea, the trial court moved forward with sentencing. In accordance with Article III, the People made the charging decision to allow Mazzarelli to plead guilty to an added offense, and the trial court then made the sentencing decision.
*309 ¶31 We acknowledge that the People, not the court, may add an uncharged offense, and that the People, not the court, may offer the defendant the opportunity to plead guilty to it as part of a plea agreement. See § 16-7-301(1) - (2), C.R.S. (2018); Crim. P. 11(f)(1)-(2). But when the People do so, any sentence concessions, agreements, or stipulations in the plea agreement are mere recommendations that the trial court is free to reject. Hence, when the People entered into the plea agreement with Mazzarelli, their decision to allow him to plead guilty to an uncharged offense did not bind the court to impose a particular sentence, including after accepting the defendant's guilty plea.
¶32 We are aware of no authority supporting the proposition that the failure to allow the People to withdraw from the plea agreement after Mazzarelli pled guilty and the court rejected the sentence concession in the agreement ran afoul of the separation-of-powers doctrine. Because the statute and rules allowed only Mazzarelli to withdraw from the plea agreement after he pled guilty and the court rejected the sentence concession in the agreement, and because the People do not question the constitutionality of the statute and rules, we reject the separation-of-powers contention.
III. Conclusion
¶33 The practical effect today's decision is likely to have on our trial courts is not lost on us. After all, we are keenly aware that the general practice in many courtrooms is inconsistent with this opinion. While we are confident our opinion will not be the death knell of plea agreements, it will no doubt change the landscape in which plea agreements occur. Even so, we are duty-bound to apply the law as written. If the statute and rules are amended in the future, we will apply them as amended. But enforcing the statute and rules as they exist requires the conclusion we reach today.
¶34 We conclude that the court of appeals correctly held that, following Mazzarelli's guilty plea, the People were not allowed to withdraw from the plea agreement simply because the trial court rejected the sentence concession in the agreement. Therefore, we affirm the court of appeals' judgment, albeit on different grounds. Since we do so, and since we do not reach the merits of the conclusions that court reached with respect to the prosecutorial misconduct and double jeopardy issues, we vacate its opinion in its entirety.
JUSTICE BOATRIGHT dissents, and JUSTICE MÁRQUEZ joins in the dissent.

Our holding is limited to situations in which the trial court (1) rejects a sentence concession (2) after accepting the defendant's guilty plea.

Nothing in this opinion should be viewed as passing judgment on the appropriate remedy, if any, when a party breaches a plea agreement after the defendant has pled guilty. That issue is not before us.

We granted certiorari to review the following three issues:
1. Whether the court of appeals erred in upholding the trial court's actions as a matter of law and finding that it could sentence the defendant outside the stipulated sentencing range contained in a plea agreement and accepted by all parties.
2. Whether the court of appeals erred in failing to answer the question about prosecutorial misconduct when the trial court specifically used the prosecutorial misconduct as a rationale for the sentence.
3. Whether the court of appeals erred in barring remand by holding that double jeopardy bars reversal of sentence and remand for resentencing since the defendant started serving his sentence.

We view the reference to "sentence concessions" as including both sentence concessions by the defendant benefitting the People and sentence concessions by the People benefitting the defendant. There is no reasonable basis to construe the term otherwise.

If the defendant were deprived of an opportunity to withdraw from the plea agreement after the trial court rejects a sentence concession, it would "remove[ ] the basis upon which [the] guilty plea was entered and draw[ ] into question the voluntariness of the plea." People v. Walker , 46 P.3d 495, 497 (Colo. App. 2002). As the U.S. Supreme Court has observed, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York , 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). This constitutional concern is not present when the People are precluded from withdrawing from a plea agreement after the defendant pleads guilty.

We do not understand this provision to require that a presentence report be available before the defendant enters a guilty plea. Rather, we read it to mean that the trial court judge may communicate her tentative approval of a proposed disposition contingent on any presentence report subsequently prepared being consistent with the parties' representations. If no presentence report is ordered, the trial court may simply indicate to the parties whether she will go along with the proposed disposition. Of course, the judge must avoid participating in plea discussions. § 16-7-302(1) ; Crim. P. 11(f)(4).

Rule 32(d) refers to "sentence concessions contemplated by a plea agreement, as provided in Rule 11(f)." (Emphasis added.) Rule 11(f)(2)(I), in turn, provides in pertinent part that the People may "make or not ... oppose favorable recommendations concerning the sentence to be imposed ." (Emphasis added.) It follows that the reference in Rule 32(d) to sentence concessions (as provided in Rule 11(f) ) must be understood to be a reference to sentence recommendations . Wright , 573 P.2d at 552-53.

Mazzarelli advanced this contention both in his answer brief and during oral argument.