JUSTICE BOATRIGHT, dissenting.
¶35 Today we learned that a stipulation is only binding on one party that enters into an agreement even though this is not what "stipulation" means. Many judicial districts in Colorado rely on the practice of stipulations to help forge agreements for pleas to some degree. The practice has functioned well for decades because at the core of these agreements is predictability. I fear that today's holding by the majority will unnecessarily have a negative impact on the orderly resolution of cases by injecting uncertainty into the process. As the majority correctly points out, ninety-four percent of state convictions are the result of plea agreements. Maj. op. ¶ 1.
¶36 In reaching their holding, the majority interprets a rule that, in my view, is ambiguous, and applies it in a way that causes words to lose their common meaning. Conversely, Crim. P. 32(d) can reasonably be read in a way that does not prohibit the prosecution from withdrawing from the plea agreement in this case. In so doing, words would retain their everyday meaning. Hence, I respectfully dissent.
¶37 To be clear, I do not disagree with how the case is being resolved for Mr. Mazzarelli. Apparently, the trial judge's work on Mr. Mazzarelli's dependency and neglect case allowed the judge to gain insights that helped him fashion a probationary sentence that was appropriate and just. The record before us indicates that Mr. Mazzarelli has completed that sentence. Under any definition of double jeopardy, his involvement in this case is over. In fact, this case should be resolved based on a finding of mootness. But it is not decided on mootness. Hence, my disagreement is about how the unique circumstances of this *310 case will unnecessarily impact how business is done in Colorado's criminal justice system.
¶38 As a preliminary matter, I agree with the majority that it is essential that judges exercise independent judgment when imposing a sentence. Further, a judge cannot lose that independent judgment because of an agreement between the parties. Where I part ways with the majority is the conclusion that a prosecutor can be bound by a plea agreement that she did not agree to. In my view, just like when any attempt to have an agreement fails to come to fruition, both parties should have an opportunity to be restored to their original position. This is simply common sense.
I. Facts
¶39 The majority conveys most of the relevant facts of the case, so a detailed recitation is unnecessary. Some additional facts, however, are important because they demonstrate that Mazzarelli, the prosecution, and the trial judge all believed that the parties were bound by the terms of the plea agreement if the agreement was accepted by the trial court.
¶40 Mazzarelli and the prosecution entered into a plea agreement whereby the prosecution would dismiss the original class 3 felony charge for child abuse in exchange for Mazzarelli pleading guilty to an added class 4 felony charge for child abuse. The parties also stipulated that Mazzarelli would be sentenced in the range of two to eight years in the Department of Corrections. The plea agreement informs Mazzarelli of this in bold font. Consistent with the stipulation, the trial judge did not even mention the possibility of probation during Mazzarelli's verbal advisement of rights. Furthermore, during the sentencing hearing the prosecution made it clear that the possibility of probation was not part of the plea agreement, which Mazzarelli never refuted. And at the sentencing hearing when the trial judge expressed his independent judgment and indicated that he would not sentence Mazzarelli to prison, he gave the prosecution the opportunity to withdraw from the plea agreement. Mazzarelli did not object to the trial judge's offer to the prosecution to withdraw from the plea agreement. Everyone understood what was happening. No one was treated unfairly when the parties entered into the plea agreement, nor was anyone treated unfairly when the trial judge exercised his independent judgment. The process worked until the prosecution was prevented from withdrawing from the plea agreement.
II. Analysis
¶41 I first explain why I disagree with the majority's conclusion that Crim. P. 32(d) only permits a defendant to withdraw from a plea agreement. I instead view Crim. P. 32(d) as ambiguous. Second, I explain how Crim. P. 32(d) can be reasonably read in a way that does not prohibit the prosecution from withdrawing from a plea agreement. Finally, because the issue is not before the court, I disagree with the majority's choice to address the issue of possible provisions in plea agreements that expressly allow the prosecution to withdraw from it if the court disagrees with the parties' concessions.
A. Crim. P. 32(d) Is Ambiguous
¶42 The majority concludes that because Crim. P. 32(d) does not contain a "provision allowing the People to ... withdraw from [a plea agreement]," the prosecution has no right to withdraw from a plea agreement. Maj. op. ¶ 16. There is logic to that conclusion, but it misses a crucial point. Crim. P. 32(d) only addresses the court's failure to accept a "concession." Both charge concessions and sentence concessions are what constitute the benefit of the bargain for defendants. Since the rejection of the concession eliminates only the defendant's incentive to enter into the plea,[1] the rule only speaks of the defendant's right to withdraw from the plea agreement. Outside of the duty and desire to do justice, the prosecution does not benefit from concessions. Their tangible benefit from a plea agreement is that the disposition of the case provides a just resolution *311 that avoids years of appeals which provides certainty for the victim and the community. Because Crim. P. 32(d) does not mention the court not accepting "the agreement," the prosecution's right to withdraw from the agreement is not implicated by the rule. In my view, it is significant that "concession" and "agreement" are not interchangeable terms. Neither party says that they are. The majority, however, effectively equates the terms.
¶43 At the heart of the reason that Crim. P. 32(d) only talks about the defendant's ability to withdraw from the agreement is that when a concession is rejected by the court, it is the defendant's voluntariness in entering into the plea that becomes an issue. See Chae v. People , 780 P.2d 481, 486 (Colo. 1989). In the simplest of terms, the prosecution's incentives for entering into a plea agreement do not suffer by the court's rejection of a concession ; therefore, they cannot withdraw from an agreement for that reason, which explains the silence in Crim. P. 32(d). In other words, Crim. P. 32(d) is there to protect defendants, not to bind the prosecution.
¶44 I therefore disagree with the majority's conclusion that the failure of Crim. P. 32(d) to mention the prosecution's ability to withdraw from a plea agreement is dispositive of the issue.[2] Not only is there a reasonable alternative reading of the rule, but the majority's interpretation of the rule causes a contortion of the ordinary meaning of words. This case is a good example of that. To satisfy the majority's perceived meaning of the rule, the majority is forced to conclude that " 'sentence stipulations,' 'sentence agreements,' 'sentence concessions,' and other similar terms are nothing more than sentence recommendations." Maj. op. ¶ 20. These phrases are not equivalent. They mean different things. For example, the plea agreement in this case was a stipulation, which is "a material condition or requirement in an agreement." Stipulation , Black's Law Dictionary (11th ed. 2019). Stipulations are binding on the parties to an agreement. A "recommendation," on the other hand, is "a specific piece of advice about what to do." Recommendation , Black's Law Dictionary (11th ed. 2019). A recommendation is advisory. Hence, a stipulation is not the same thing as a recommendation. When an interpretation of a rule causes words to lose their everyday meaning, that interpretation must be questioned and is an indication that the rule is ambiguous. On the other hand, if you give words their ordinary meaning, then the silence in Crim. P. 32(d) about the prosecution's ability to withdraw from a plea agreement makes sense.
B. The Majority's Conclusion Does Not Conform with How Plea Bargaining Has Been Conducted in This Jurisdiction for Decades
¶45 The majority attempts to distinguish case law that has provided a core principle of plea agreements in Colorado for over forty years.
¶46 In 1978 in People ex. rel. VanMeveren v. District Court , we held that a prosecutor has a right to withdraw from a plea agreement if the trial court intends to modify the terms of the agreement. 195 Colo. 34, 575 P.2d 4, 7 (1978). We revisited and narrowed Van Meveren in Keller v. People , 29 P.3d 290 (Colo. 2000). In Keller , we explained that plea agreements are contractual in nature and, thus, a prosecutor can only withdraw from a court's modification of a plea agreement when that modification amounts to a material and substantial breach of the plea agreement.[3] Id. at 295.
¶47 The majority concludes that Keller is factually distinguishable because it involved a *312 breach of a plea agreement by the defendant, whereas Mazzarelli did not affirmatively act in breaching the plea agreement here. Maj. op. ¶¶ 25-26. While there is that factual difference, I do not believe that difference makes the rule announced in Keller inapplicable here.
¶48 First, the rule in Keller is not limited to situations where the defendant's actions cause the breach of a plea agreement. Keller held that "the prosecution will be permitted to withdraw from a plea agreement ... if it shows that a reduction in sentence amounts to a material and substantial breach of the plea agreement." Keller , 29 P.3d at 291. Thus, the rule in Keller is triggered when the plea agreement is modified in a material and substantial way and is not limited to situations where only a defendant breaches the plea agreement. Clearly, the plea agreement here was modified in a material and substantial way.
¶49 Significantly, the trial court here indicated by its conduct that it had agreed to be bound by the terms of the plea agreement. The trial court was advised by the parties that the plea agreement was a stipulation and that the defendant was to be sentenced to the Department of Corrections. The written Rule 11 advisement titled "Plea Agreement" states in bold print that "the sentence will be a Department of Corrections Sentence within the Extraordinary Risk Crime Range of 2 to 8 years." At no point during the colloquy between the trial judge and the defendant was probation ever mentioned. Furthermore, the trial judge at no point advised the parties that it would not be bound by the agreement. That colloquy evinces that the trial judge was accepting the plea agreement and agreeing to be bound by it. The trial judge's later conduct confirms that he believed that he was bound by the agreement. When the trial judge concluded that prison was not the appropriate sentence, he offered the prosecution the opportunity to withdraw from the plea agreement. When the prosecution indicated that it was going to withdraw, the judge then imposed a sanction against the prosecution as a basis to deny the withdrawal. The judge knew that he had agreed to be bound by the plea agreement. If he didn't, he would have just imposed the probation sentence, making the imposition of a sanction unnecessary.
¶50 Hence, while I agree that the facts in Keller are different than the facts of this case, the core principle in both cases remains the same. When a clearly defined plea agreement that everyone has voluntarily entered is modified in a material way, the party who is negatively impacted by the modification has a right to withdraw from the agreement and be restored to her original position. Importantly, application of this principle retains the trial court's ability to exercise its independent judgment.
¶51 I agree with the majority that the trial judge here could have rejected the plea agreement even after agreeing to be bound by it. I only disagree about the consequences of that decision. It does not make sense that one party can be bound to an agreement that is materially changed without some type of indication that doing so was a possibility. Therefore, I believe that the remedy should have been to allow the prosecution to withdraw from the plea agreement. After all, there cannot be an agreement without everyone being in agreement.
C. The Majority Decides an Issue That Is Not Before the Court
¶52 I also disagree with the majority's choice to address the issue of possible provisions in a plea agreement that expressly allow the prosecution to withdraw from it if the court disagrees with the parties' concessions. Maj. op. ¶ 27. I disagree for two reasons.
¶53 First, such a conclusion exceeds the issues in this case. See PDK Labs. Inc. v. U.S. Drug Enf't Admin. , 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("[T]he cardinal principle of judicial restraint [is] if it is not necessary to decide more, it is necessary not to decide more.").
¶54 Second, this conclusion contradicts Keller , where we said that "[b]ecause the plea agreement did not foreclose the future possibility of a reduction in sentence, the ordered sentence reduction could not amount *313 to a material and substantial breach of the plea agreement between the parties." 29 P.3d at 298. In other words, a plea agreement can be tailored to include specific conditions. In fact, the more specific the agreement is the less likely there will be disagreements like the one here.
III. Conclusion
¶55 I believe that Crim. P. 32(d) does not forbid a prosecutor from withdrawing from a plea agreement that is modified by a trial court. But I acknowledge that the rule is ambiguous as to that point. To resolve any ambiguity, I would recommend that this court amend Crim. P. 32(d) to reflect the realities of how Colorado's criminal justice system actually functions.[4] After all, rules should assist and reflect everyday practice, not inhibit it. In amending Crim. P. 32(d), I would focus on drafting a rule that gives words their plain, everyday meaning. A stipulation would be binding on both parties, whereas a recommendation would be advisory only. Any amendment should confirm the practice that a court, after exercising its independent judgment, may decide not to be bound by the agreement; and at that point either side can withdraw from the agreement resulting in both sides being restored to their original position. This would accomplish three things: (1) it would protect a defendant's right to enter into any agreement voluntarily; (2) it would preserve the ability of the trial court to exercise its independent judgment; and (3) it would restore predictability to the process.
¶56 For the forgoing reasons, I respectfully dissent.
I am authorized to state that JUSTICE MÁRQUEZ joins in this dissent.

Without any analysis, the majority pronounces that sentence concessions benefit the prosecution. I disagree. Only the defendant serves the sentence. Therefore, only the defendant benefits from a sentence concession.

The majority also relies on section 16-7-302(2), C.R.S. (2018), to support their conclusion that the prosecution cannot withdraw from a plea agreement. Maj. op. ¶ 16. I agree with the majority that section 16-7-302(2) and Crim. P. 32(d) are functionally equivalent. Id. Hence, my arguments that Crim. P. 32(d) does not prohibit the prosecution from withdrawing from a plea agreement apply equally to section 16-7-302(2).

The Keller court acknowledged that Van Meveren had the analytical underpinnings of a contractual analysis, but comments that VanMeveren 's rationale was nonetheless not fully explained. Keller , 29 P.3d at 295.

I would encourage the General Assembly to amend section 16-7-302(2) for the same reason.